JOHN W. SHERWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 7748.   Promulgated September 19, 1927.

1. Profit on sale of stock *held* to have been realized in 1919.
2. Claimed deduction for bad debt disallowed.

*H. A. Mihills, C. P. A.*, for the petitioner.
*M. E. McDowell, Esq.*, for the respondent.

The Commissioner has determined deficiencies in income taxes for
the years 1919 and 1920 in an amount in excess of $10,000.   The peti-
tioner alleges that the Commissioner erred in determining that the
profit from the sale of certain shares of stock in the Penn Oil Co. was
received in 1920 rather than in 1919, and further, that the Commis-
sioner erred in refusing to allow as a deduction a bad debt charged off
during the year 1920.

FINDINGS OF FACT.

Petitioner has been engaged in the purchase and sale of oil in
Baltimore, Md., since 1896, and during the taxable years operated
there under the trade name of Sherwood Brothers.

Some time prior to the taxable year petitioner employed Paul
Himmelfarb as a salesman in Washington and adjacent territory.
The latter suggested to petitioner that they organize a company for
the sale of oil products in Washington, and thereafter, pursuant to
that suggestion, the Penn Oil Co. was organized with its original
plant located at Rosslyn, Va.   The capital was $5,000, which was
subscribed for by petitioner and Himmelfarb in equal amounts.
At that time Himmelfarb was able to raise only $1,000 and petitioner
loaned him the additional $1,500 with which to purchase stock in
the newly organized corporation.   Thereafter, it was decided to
establish a branch in Philadelphia and a piece of property on a
railroad siding in that city was leased.

After a time petitioner and Himmelfarb ceased to agree on mat-
ters of business policy.   On January 21, 1919, petitioner requested
his brother, who was an attorney practicing in Baltimore, to confer
with Himmelfarb and arrange either a division of the property of
the Penn Oil Co. or a plan whereby Himmelfarb might purchase
petitioner's interest in that corporation.   Thereafter a number of
conferences ensued between Himmelfarb and petitioner's counsel
for the purpose of arranging a basis for separating their interests.
Himmelfarb endeavored to raise sufficient money to purchase peti-
tioner's stock in the Penn Oil Co., but without success.   Petitioner
then suggested that he take over the Philadelphia plant and leave

the Washington plant to Himmelfarb. To that end the books were audited as of September 30, 1919, the audit disclosing a book value for the plant and equipment in Philadelphia of approximately $17,000, which was substantially one-half of the capital and surplus of the corporation. The merchandise on hand at the Philadelphia plant, inventoried at $12,901.12, was to be separately settled for by petitioner. Himmelfarb was anxious to retain the name of the Penn Oil Co. and in order that this might be accomplished it was agreed that the transaction would take the form of a sale by petitioner of his stock in the Penn Oil Co. to Himmelfarb and a purchase by petitioner from the Penn Oil Co. of its plant in Philadelphia.

Pursuant to the understanding so arrived at petitioner on October 1, 1919, went into possession of the Philadelphia plant and equipment; the name of the Penn Oil Co. was removed from all the property and in its place there was substituted the name of " Sherwood Brothers," and the business men with whom petitioner dealt were advised that he was no longer associated with the Penn Oil Co. A new set of books for the Philadelphia branch was opened in the name of Sherwood Brothers, and the income from the operation of the business from October 1 to December 31, 1919, was appropriated by petitioner and was reported by him in his personal income-tax return for the year 1919. At the same time Himmelfarb took over the exclusive management of the business at Rosslyn, Va., which continued to operate under the name of the Penn Oil Co.

At this time the shares of stock in the Penn Oil Co. were not transferred from the petitioner to Himmelfarb, but were endorsed in blank and turned over to petitioner's brother; nor was a formal assignment of title to the Philadelphia plant executed. The reason for the delay in delivering the certificates of stock and executing an assignment of the Philadelphia plant to petitioner was that there were certain outstanding obligations of the Penn Oil Co. which petitioner wanted settled, as he was afraid the creditors of the Penn Oil Co. might have recourse against him to the extent of the property taken over by him in Philadelphia. There were also pending two suits against the Penn Oil Co., one by the Triangle Petroleum Co., which was suing the Penn Oil Co. for $8,000 to $10,000, and another suit pending in Philadelphia in which a judgment was demanded in the amount of from $2,000 to $3,000. It was conceded by the parties that the surplus as it existed on the books of the Penn Oil Co. was bound to be diminished as a result of these suits.

On March 1, 1920, a final settlement was effected. A check was given by Himmelfarb to petitioner in payment for the stock, which check was in an amount equal to the value of the Philadelphia plant. This check was immediately endorsed over to the Penn Oil Co. in

payment for the Philadelphia branch. The stock certificates were delivered, and the Penn Oil Co. executed an assignment of the Philadelphia lease on which the plant is located and also assigned the plant and equipment.

On December 31, 1920, petitioner charged off of his books the sum of $10,412.63, being the account of C. B. Cottman. Cottman operated a service station in Baltimore and the indebtedness was incurred in the purchase of gas and oil from petitioner. Cottman had been a customer of petitioner for several years and had been prompt in the payment of his accounts until November, 1920. He did not pay his account for either November or December, 1920. In December, 1920, Mrs. Cottman called to see petitioner and warned him not to extend further credit to her husband, stating that he had gotten in with a bad crowd and had lost a good deal of money gambling. Petitioner thereupon and during December, 1920, made an investigation of Cottman's financial condition and ascertained that the title to the property in which Cottman and his wife lived and on which the service station was located was in Mrs. Cottman. He demanded payment of Cottman and was advised that the latter had no money with which to pay. Thereafter during the year 1920 and for a week or more in 1921 petitioner continued to sell goods to Cottman, being induced to do so by reason of the fact that this station was the best distribution point in Baltimore for petitioner's product known as "Betholine." Petitioner also had hopes of making some arrangement with Mrs. Cottman whereby he could continue to operate the service station and between the 5th and 10th of January, 1921, effected an arrangement whereby he would operate the service station for a fixed rental to be paid to Mrs. Cottman, who agreed orally that a certain amount of the rental might be withheld by petitioner for the purpose of liquidating her husband's indebtedness.

OPINION.

ARUNDELL: The petitioner admits receiving a profit of the difference between the cost of his Penn Oil Co. stock, $2,500, and the recorded selling price of it, $17,817.37. He says that this profit was realized in 1919, when he took over the property of the Philadelphia branch of the company. The respondent has placed the profit in income for 1920, the year in which a formal record of the transaction was made.

Sherwood had, in 1919, endorsed his stock and deposited it in escrow with his attorney. He took possession, in 1919, of the property which by the agreement he was to receive for his stock. He notified business men with whom he dealt that he was no longer connected with the Penn Oil Co. He held himself out, to all who

might care to see, as the sole proprietor of the Philadelphia properties by effacing the name "Penn Oil Co." from all pumps, tanks, etc., and painting thereon his trade name of "Sherwood Brothers." Sherwood took physical possession of the property on October 1, 1919. According to the list of assets of the Philadelphia branch which was placed in evidence all of the property transferred was personal property, the company owning no real property there. His possession of the personal property pursuant to the agreement was recognized by the parties as valid. The parties having recognized the oral agreement as binding, it is not open to attack by the respondent in the absence of fraud or attempted evasion of taxes.

The meeting of March 1, 1920, was held merely in order to make a formal record of the transfer of property that had been made and because Sherwood and Himmelfarb desired to be fully protected in their possession of the respective properties. As we have pointed out above, Sherwood had the Philadelphia property and insofar as he was concerned the meeting held in 1920 was not necessary. As to Sherwood's stock, while it was not delivered to Himmelfarb until 1920, the evidence shows that Sherwood considered that after he had indorsed it and turned it over to his attorney in 1919 he had nothing further to do with it and that he had surrendered it.

In view of the agreement between the holders of all the stock of the Penn Oil Co. and their subsequent acts, designed to carry it into effect, it is our opinion that an effective transfer took place in 1919, and the petitioner realized his gain in that year.

The remaining question is whether the Cottman account in the amount of $10,412.63, is a proper bad debt deduction for the year 1920. The facts with respect to this account do not convince us that the petitioner had determined it to be worthless in the taxable year. While the debtor had no property it appears that the petitioner had hopes of continuing his sales at the Cottman location which would naturally result in liquidation of at least part of the account. Then, too, it is worthy of note that during the remainder of the year, after the financial condition of Cottman had been ascertained, and until a lease on the property was secured in 1921, the petitioner continued to furnish supplies to the allegedly worthless debtor. It is difficult to square such action with a claim that the account was ascertained to be worthless.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LANSDON and STERNHAGEN.