### HOFFMAN v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 465.

Circuit Court of Appeals, Second Circuit.

June 25, 1934.

Jacob Schapiro, of New York City (Harold Wisan, of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and F. A. Le Sourd, Sp. Assts. to Atty. Gen., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The petitioner claims to be entitled to a deduction of $43,533.75 as a loss sustained in 1926 on the sale of shares of stock. The Commissioner originally allowed the loss, but by an amendment to his answer set up that the sale did not occur in 1926. The Board so held, contrary, as the petitioner asserts, to the proven facts and the applicable law. This presents the first question to be determined.

In 1923 Hoffman purchased for $75,000 one half the stock in the Dorman Commission Company; the other half was owned by Dorman and members of his family. In 1925 the corporation was losing money, and Hoffman proposed that it be liquidated at the end of the year. Dorman, however, desired that the business be continued. About April, 1926, it was orally agreed between them that Dorman would buy Hoffman's shares at their book value on July 1, 1926. An accountant made up a statement of the book value of the company's stock as of that date, and on July 9th the parties met at the office of Hoffman's attorney. Hoffman indorsed his stock certificates in blank and delivered them to the attorney to be turned over to Dorman "when certain formalities had been complied with." For his stock Hoffman was to receive a half interest in a mill property, one-half the value of which was $29,866.25, and Dorman's note for $1,600, bearing interest from July 1st. The note was delivered within a day or two after July 9th. Legal title to the mill stood in Dorman as trustee for the commission company, and he was to have the option of (1) formally transferring a half interest to Hoffman, or (2) selling the property and paying over half the proceeds, or (3) organizing a new corporation to which the mill should be conveyed and issuing to Hoffman one-half of its stock. Ultimately the third alternative was adopted,

but with a modification resulting from the bringing in of additional capital by one Ackerly, so that each of the three received one-third of the mill company stock. Dorman did not turn over to Hoffman certificates of the mill company stock until 1927, and did not obtain from the attorney the certificates of the commission company stock indorsed by Hoffman until 1929. The parties testified, as did also the attorney, that they considered the sale of the latter consummated on July 9, 1926, as of July 1st. Thereafter Hoffman had nothing to do with the operation or control of the commission company. On the other hand, he did advance money for the operation of the mill during the latter part of 1926 and before the mill corporation was organized.

Upon this record the Board was in error in concluding that the sale of Hoffman's stock was not closed in the year 1926. The ground upon which it rested the conclusion that title did not pass on July 9th when the certificates were indorsed and delivered to the attorney was that he was to hold possession of them until Dorman should perform his part of the bargain. But the law is well settled that nondelivery of possession would not preclude title to the stock passing forthwith to Dorman if such was the intention of the parties. Hatch v. Oil Co., 100 U. S. 124, 132, 25 L. Ed. 554; Hammer v. United States, 249 F. 336 (C. C. A. 2); Dahlinger v. Commissioner, 51 F.(2d) 662 (C. C. A. 3); Eavenson v. Commissioner, 51 F.(2d) 664 (C. C. A. 3); Sanitary Carpet Cleaner v. Reed Mfg. Co., 159 App. Div. 587, 145 N. Y. S. 218; Sherwood v. Commissioner, 8 B. T. A. 103; Swenson v. Commissioner, 14 B. T. A. 675. Not only did the seller, the buyer and the party with whom the certificates were deposited testify that the sale was intended to be consummated on July 9th, but statements and conduct of the parties at that time and thereafter were entirely consistent with such intention. The loss on the sale was sustained in 1926.

In addition to this loss the taxpayer sustained a loss of $1,700 on the sale of machinery, making his total capital loss for 1926 the sum of $45,233.75. The second question is whether a taxpayer who sustains a capital loss and no capital gain is limited by section 208(c) of the Revenue Act of 1926 (26 USCA § 939 note) to a 12½ per cent. deduction of his capital net loss from his total tax, as the Board ruled. The petitioner argues that since he had no capital gains he did not sustain a capital net loss. He frankly admits that Piper v. Willcuts, 64 F.(2d) 813 (C. C. A. 8),

is directly against his contention. The matter was thoroughly considered in that opinion, and it will suffice to say that we agree with the views there expressed.

In accordance with the foregoing opinion, the correct amount of the deficiency is $1,671.18. The order is accordingly modified and a deficiency entered in this sum.