EDMUND I. KAUFMANN, PETITIONER, ET AL.,[1] v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97157, 97158, 97159, 97160, 97161, 97162.

Promulgated April 10, 1942.

---

[1] Proceedings of the following petitioners are consolidated herewith: Marcus S. Goldnamer; Jeanette Levi; Helen Goldnamer; Saul Kaufmann; and Lillian S. Kaufmann.

*Howe P. Cochran, Esq.,* and *Margaret F. Luers,* for the petitioners.
*L. W. Creason, Esq.,* for the respondent.

### OPINION.

TYSON: The transaction here under consideration was apparently devised with the intention of bringing it within the scope of section 112 (g) of the Revenue Act of 1932,[2] so that the stockholders of the Rosenthal Co. could receive all of the shares of stock of the new corporation, Associates, without the recognition of any gain to them. The Rosenthal Co. assigned the stocks of the retail jewelry corporations and the notes receivable to Associates, on August 3, 1933,

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

   \*       \*       \*       \*       \*       \*       \*

(g) DISTRIBUTION OF STOCK ON REORGANIZATION.—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

in consideration for the issuance to it of the entire 1,500 shares of Associates and $19,892.29 in cash, and on August 10, 1933, the Rosenthal Co. by corporate resolution authorized the distribution on August 15, 1933, of the 1,500 shares of Associates to its stockholders. However, no entries of the transaction were made on the books of account and no certificates for the stock of Associates were issued or delivered, either to the Rosenthal Co. or to its stockholders, until the year 1934. The Revenue Act of 1934 was approved on May 10, 1934. By that act, Congress, for taxable years beginning after December 31, 1933, abolished the privilege of receiving, tax free, distributions of the kind described in section 112 (g), *supra*.[3] The Commissioner, in Regulations 86, prescribed by him under the Revenue Act of 1934, incorporated a provision reading as follows:

ART. 112 (g)–5. *Receipt of stock or securities in reorganization without surrender of stock by shareholder.*—Any distribution, though in pursuance of a plan of reorganization, to shareholders without the surrender of their stock, in any taxable year beginning after December 31, 1933, by or on behalf of a corporation a party to a reorganization, * * * of stock or securities of another corporation a party to the reorganization, shall be taxed to such shareholders as a dividend, within the meaning of section 115, to the extent that the fair market value of such stock or securities at the date of the distribution is not in excess of the earnings or profits of the corporation accumulated after February 28, 1913. * * *

The Commissioner determined that the petitioners had received the stock of Associates in March 1934 as a dividend distribution by the Rosenthal Co. and that such distribution represented income in the year 1934 taxable under article 112 (g)–5, *supra*. He accordingly increased the dividend income of each petitioner to the extent of $415.83 for each share of stock received by him.

The deficiencies are for the year 1934, and no claim is here made that, if the distributions of stock here involved were made in that year, they would be tax free. The questions for decision are (1) whether the petitioners derived taxable income from the transaction here involved in the year 1934, and (2) if they did, whether the Commissioner erred in determining the fair market value of the stock of Associates and the amount of the earnings of the Rosenthal Co. accumulated after February 28, 1913, for the purpose of computing the amount to be included in the income of the petitioners under article 112 (g)–5, *supra*.

The first question requires consideration of the effect of the resolution declaring the dividend in August 1933, and of the issuance and delivery of the certificates for the shares of stock of Associates in payment of that dividend in March 1934.

[3] See section 112 of the Revenue Act of 1934, omitting section 112 (g) of the Revenue Act of 1932; and section 1, Revenue Act of 1934. See also H. Rept. 704, 73d Cong., 2d sess., p. 14; S. Rept. 558, 73d Cong., 2d sess., pp. 16, 32.

The Commissioner contends that the mere declaration of the dividend in stock of Associates did not constitute "either a dividend or a distribution" and that, since the certificates representing such stock were actually issued and delivered in March 1934 and the distribution was not recorded as having been made on the books of the Rosenthal Co. until March 1934, the stock was "paid to" and received by the petitioners in March 1934.

The petitioners contend that the resolution had the effect of vesting ownership of the stock in them on August 15, 1933, the date on which the dividend was made payable, and that the tardy issuance and delivery of the certificates had no bearing upon the time of passage of title to the stock, since stock certificates are nothing more than evidence of ownership and do not represent the stock itself. They further contend that they acquired the actual ownership of the stock in 1933 by virtue of a distribution made and completed in that year in pursuance of a plan of reorganization; that the principles of constructive receipt are inapplicable; and that even if the distribution should be regarded as an ordinary corporate dividend, taxable as income when it became unqualifiedly subject to the demand of the distributees, the stock was set aside for them and they became the owners thereof on August 15, 1933, and, hence, they could then have had the certificates on their demand.

We think it is obvious from our findings that the distributions of the Associates stock here involved were made in pursuance of a plan of reorganization, such reorganization being defined in section 112 (i) and the plan being covered by section 112 (g) of the Revenue Act of 1932.

Notwithstanding that the distribution of the stock here involved was made in pursuance of such a plan of reorganization as is provided for in section 112 (g), *supra*, yet, nevertheless, it is here taxable as a dividend if it was, in fact, made in 1934, to the extent that the value of the stock represented earnings and profits accumulated after February 28, 1913; and this because section 112 (g), which would render such distribution nontaxable, was not in force and effect in 1934. Therefore, the time when the distribution became income for tax purposes must be tested under the rules applicable to income received in the form of corporate dividends.

In those cases where income is accounted for on the accrual basis the rule is that dividend income accrues to the shareholder when a corporate debt on account of the dividend is created and the liability becomes fixed, and if, by the law of the domicile of the declaring corporation, the debt is created when the dividend is declared, the income accrues at that time; but if, by that law, the debt is created at a future date when the dividend is made payable, the income accrues at that future date. *Estate of Henry W. Putnam*, 45 B. T.

A. 517; *Falmouth Co.*, 45 B. T. A. 1033, and authorities cited. In those cases where, as here, income is accounted for on the cash basis, the rule is, as stated in a regulation which, with unimportant change in phraseology, has been in effect since 1921, that the dividend constitutes income of the stockholder when the cash or other property is unqualifiedly made subject to his demand.[4] This latter rule, which requires complete dominion over the property in question, goes far beyond the mere accrual of the right to such property. Cf. *Falmouth Co., supra; Cox Motor Sales Co.*, 42 B. T. A. 192.

The uncontradicted evidence here is to the effect that the Rosenthal Co. not only decided and intended in 1933 to distribute to its stockholders all of the stock of Associates, but also that it voted at the meeting of August 10, 1933, to make such distribution on August 15, 1933. The Rosenthal Co. thus became obligated to pay the dividend on August 15, 1933, and the subject matter of the dividend, i. e., the 1,500 shares of Associates stock, was earmarked and segregated from other corporate assets by specific description thereof in the resolution by which the dividend was voted. The stock was thereafter held by the Rosenthal Co. as trustee for its stockholders and it was powerless to rescind its action as to such distribution. *Commissioner* v. *Scatena*, 85 Fed. (2d) 729. It follows, therefore, that the petitioners, on August 15, 1933, had an absolute and fixed right to receive the stock of Associates. *Estate of Henry W. Putnam, supra; Falmouth Co., supra.*

Shares of stock are the interest or right which the owner thereof has in the management, profits, and assets of the corporation, while stock certificates are mere symbols or paper evidences of the ownership of the shares and are not the stock itself. One may be a shareholder in a corporation without ever receiving a certificate of stock therein; and a shareholder may sell his interest in and pass title to the stock prior to delivery of certificates thereof if such was the intention of the parties. *Pacific National Bank* v. *Eaton*, 141 U. S. 227; *Jellenik* v. *Huron Copper Mining Co.*, 177 U. S. 1; *Richardson* v. *Shaw*, 209 U. S. 365, 378; *Hoffman* v. *Commissioner*, 71 Fed. (2d) 929; *Snyder* v. *Commissioner*, 73 Fed. (2d) 5; *Commissioner* v. *Scatena, supra*, affirming 32 B. T. A. 675; *Minal E. Young, Executor*, 6 B. T. A. 472; *Federal Grain Corporation*, 18 B. T. A. 242; *Anita Owens Hoffer*, 24 B. T. A. 22; *Lammerding* v. *Helvering*, 121 Fed. (2d) 80, affirming 40 B. T. A. 589; *Mascot Stove Co.* v. *Commissioner*,

---

[4] Art. 115-1. [Regulations 86.] A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands.

Art. 42-3. [Regulations 86.] Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder.

See also arts. 641 and 333, Regulations 77, under the Revenue Act of 1932.

120 Fed. (2d) 153, affirming 40 B. T. A. 1057; *Kansas, O. & G. Ry. Co.* v. *Helvering*, 124 Fed. (2d) 460, affirming 42 B. T. A. 1128.

Upon due consideration of all of the evidence presented, it is our opinion that the petitioners not only acquired (1) a fixed right to receive the stock of Associates on August 15, 1933, but also that they acquired at the same time (2) the ownership of and the unqualified dominion and unlimited control over the said stock. Neither the transfer of ownership of stock nor the conferring of dominion and control over stock is established by the mere issuance and delivery of stock certificates. *Minal E. Young, Executor, supra; Commissioner* v. *Scatena, supra.* The transfer of the stock here involved was effected and completed by the corporate resolution of August 10, 1933, adopted in connection with a plan of reorganization, and before the delivery of the stock certificate. The plan was agreed upon by Goldnamer, Kaufmann, Rosenthal, and the other stockholders of the Rosenthal Co., and a written agreement was made by the Rosenthal Co., duly approved by its stockholders, to transfer a substantial part of its assets to Associates for the entire stock of the latter company. Pursuant to that agreement a bill of sale was executed by the Rosenthal Co. to Associates, and this was followed by a resolution of the Rosenthal Co., also a part of the plan, that the stock of Associates be distributed pro rata to its stockholders as a dividend on August 15, 1933. Although the Rosenthal Co. had not, at that time, received a certificate for the 1,500 shares of Associates and no certificates whatever had then been issued, there is no contention here that the Rosenthal Co. did not become the owner of the stock of Associates on August 15, 1933, and the respondent, on brief, concedes that the Rosenthal Co. was such owner in 1933. There was no express or implied condition, in the resolution or otherwise, which prevented the passage of all of the rights of ownership to the stockholders, including dominion and control.

The corporate intention to effect an immediate and unqualified distribution of the stock of Associates on August 15, 1933, and the understanding of the stockholders that this would be done are clearly established by the plan of reorganization, the terms of the resolution of August 10, 1933, and the testimony of Goldnamer, the accountant, and the attorney, who were active participants in the formulation and execution of the plan of reorganization.

In support of his contention that the distributions of Associates stock here involved were not made on August 15, 1933, by the adoption of the resolution of August 10, 1933, providing for such distributions, respondent cites the cases of *Mason* v. *Routzahn*, 275 U. S. 175 and *Avery* v. *Commissioner*, 292 U. S. 210. The former case is distinguished on its facts in the vital particular that in that case the

resolution declaring the dividend involved therein is not shown to have specified a definite time for the payment of the dividend, as was done by the resolution in the instant case. The case of *Avery* v. *Commissioner, supra,* is also distinguished on its facts in that there the holding that dividends declared in November of one year and payable on or before December 31 of that year were actually received by the stockholders in January of the following year, was based upon an invariable practice of the corporation, the deliberate design of which was to prevent the actual receipt by the stockholders of payment of the dividends until January of the following year; a design which was known to, and acquiesced in, by the stockholders. No such facts appear in the instant case.

In addition to the fact that the certificates were not actually issued until March 1934, some of the other evidence tends to reflect distribution of the stock here involved in that month. This evidence consists of entries made on the journal and ledger accounts of the Rosenthal Co., the former dated March 31, 1934, and the latter dated March 1, 1934, charging the amount of the distributions to surplus and crediting it to investments. The Commissioner relies upon these latter entries, in addition to the fact that no stock certificates of Associates were issued until 1934. The writing off of the distribution on the books is, of course, some evidence of the time the stock was placed within the dominion of the stockholders. But the fact that charges against surplus and credits to investments were made on the books in March 1934 purporting to reflect a distribution of the stock at that time does not warrant the conclusion that the stock was made unqualifiedly subject to the demand of the petitioners for the first time, in the year 1934. Book entries have some evidentiary value, but on an issue of whether income is to be taxed in one year or another the books are neither indispensable nor conclusive and the decision must rest on the actual facts. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216; *Doyle* v. *Mitchell Brothers*, 247 U. S. 179; *Wessel* v. *United States*, 49 Fed. (2d) 137; *J. M. Loftis et al., Administrators*, 6 B. T. A. 725; *Luther Elkins*, 12 B. T. A. 1058; *Marian Otis Chandler*, 16 B. T. A. 1248; *Ohio Brass Co.*, 17 B. T. A. 1199; and *Edgar Stanton et al., Executors*, 34 B. T. A. 451. As we said in the *Loftis* case, *supra,* "While book entries may afford some evidence to support a fact, it is well established that they can not of themselves prove a fact otherwise authoritatively denied." The evidence afforded by the book entries in the instant proceedings must yield to the otherwise proven and established fact that ownership and unrestricted command over the stock passed to the petitioners on August 15, 1933, under the resolution of August 10, 1933, authorizing the distribution of the stock on August 15, 1933. We, therefore, reject

the Commissioner's contention that the stock of Associates was paid to, and was received by, petitioners in March 1934, and hold that it was acquired and became unqualifiedly subject to their demands on August 15, 1933, and is not taxable to them as income of the year 1934.

In view of our conclusion on the primary question, it is unnecessary to determine the fair market value of the stock of Associates, as of March 31, 1934, or the amount of the earnings and profits, as of that date, which the Rosenthal Co. had accumulated after February 28, 1913.

*Decision will be entered under Rule 50.*