**HELVERING, Commissioner of Internal Revenue, v. KAUFMANN.**

**SAME v. GOLDNAMER (two cases).**

**SAME v. KAUFMANN et al.**

Nos. 5044–5047.

Circuit Court of Appeals, Fourth Circuit.

May 28, 1943.

Bernard Chertcoff, Sp. Asst. to the Atty Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key and J. Louis Monarch, Sp.Assts. to the Atty. Gen., on the brief), for petitioner.

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers, of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

The E. M. Rosenthal Jewelry Company, a corporation of the District of Columbia, made a distribution of stock to its stockholders, the taxpayers in these consolidated cases, in a transaction which originated in 1933 and included the delivery of the stock certificates in 1934. The distribution took place in pursuance of a plan of corporate reorganization, and if it was effected in 1933 as the Board of Tax Appeals held, 46 B.T.A. 924, it came within the terms of § 112(g) of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 513, and no taxable gain to the distributees occurred; but if the distribution took place in 1934 in the eye of the law, as the Commissioner of Internal Revenue contends, it was taxable, because the Revenue Act of 1934, 48 Stat. 580, 26 U.S.C.A. Int.Rev.Acts, page 659 et seq., contained no provision comparable to § 112(g) of the Act of 1932. In short, the controversy in the main turns on the question whether delivery of the stock certificates was necessary to effectuate the distribution under the taxing statutes.

The Rosenthal Company was organized in 1923 with a capital stock of 1,500 shares of the par value of $100 each, which was held by members of the Kaufmann, Goldnamer and Rosenthal families and by the estate of Albert J. Levi during the years in question. The taxable year of the Rosenthal Company ended on the 31st day of March. The individual taxpayers were on a cash receipts and disbursements basis and filed returns on that basis for the years 1933 and 1934. Edward I. Kaufmann has been president and Marcus S. Goldnamer has been secretary and treasurer of the corporation since 1923. Together they controlled

its affairs which were under the management of Goldnamer.

The Rosenthal Company was the owner of the majority of the stock in a number of corporations which operated retail jewelry stores in various cities throughout the United States under the supervision of Goldnamer. These stores bought most of their merchandise from the Rosenthal Company and because of its ownership of their corporate stock it had difficulty in 1932 and the first part of 1933 in getting the regular wholesale dealer's discount. Rosenthal Company was also advised by its attorney that it could not legally own stock in other corporations under the laws of the District of Columbia. Accordingly, the controlling stockholders of Rosenthal Company, after consultation with attorneys and accountants, decided in April, 1933 to organize a new Delaware corporation to be called General Associates, Inc., with a capital stock of 1,500 shares of the par value of $100 each, and to transfer to it the corporate stock of the retail corporations in exchange for the entire capital stock of Associates and the sum of $19,892.29 in cash; and to distribute the stock of the Associates forthwith among the stockholders of the Rosenthal Company pro rata.

The new corporation was incorporated in Delaware in May, 1933 and Kaufmann and Goldnamer have since held the offices of president and secretary-treasurer respectively. At that time the Rosenthal Company carried the stocks of the retail corporations on its books in an investment account of the aggregate cost of $294,106; and also owned promissory notes in the aggregate sum of $49,826.08, most of which were secured notes of the retail corporations. On July 21, 1933 the Rosenthal Company offered in writing to Associates to sell to it the stock of the retail corporations on the terms outlined above. On August 2, 1933 the stockholders and directors of the Rosenthal Company adopted resolutions authorizing this transfer and on August 3, 1933 Associates accepted the offer. On the same day the Rosenthal Company executed and delivered a written instrument, stating that it sold and assigned the stock of the retail corporations and the notes to Associates in consideration of 1,500 shares of the latter's stock and the sum of $19,892.29 in cash; but the stock certificates in these corporations were not endorsed and delivered to Associates.

On August 10, 1933 the directors of the Rosenthal Company adopted a resolution that the corporation "pay to its stockholders of record on August 15, 1933 a special stock dividend of the stock of General Associates, Inc., to be paid the stockholders of E. M. Rosenthal Jewelry Company in the same proportion of the stock held by said stockholders in the said E. M. Rosenthal Jewelry Company."

During the period from August 3, 1933 to January 31, 1934 the Rosenthal Company collected dividends on the stock of the retail corporations in the aggregate sum of $13,310.48 and credited it to the "dividends received" account of its ledger. The Associates did not open its books of account until January 1934 and did not issue certificates for shares of its capital stock until May 31, 1934. In January, 1934 an accountant audited the books of the Rosenthal Company and made entries to show the transaction by which the exchange was made with the Rosenthal Company and also to show that the aforegoing dividends should have been credited to Associates; and at the same time entries were made on the books of Associates to show the transaction with the Rosenthal Company. Associates reported the sum of $13,310.48 as dividends received from domestic corporations on its income tax report for the fiscal year ending June 30, 1934. The opening entries on Associates' books were dated August 10, 1933 and included an entry of the sum of $19,892.29 as a liability to the Rosenthal Company. The Rosenthal Company retained possession of the certificates for the shares of stock of the retail corporations until March 31, 1934 when it sent them to the retail corporations so that new certificates might be issued in the name of Associates.

On or about March 31, 1934 certificates for shares of stock of Associates were prepared. One of these certificates was for 1,500 shares in the name of Rosenthal Company and was antedated August 10, 1933. This certificate was assigned by Rosenthal Company to its stockholders and in lieu thereof 8 certificates aggregating 1,500 shares were issued to the stockholders of the Rosenthal Company under date of March 1, 1934 and were delivered to them on or about March 31, 1934. They continued to hold all of their shares in that company during the year 1934. The taxpayers did not include in their income tax return

either for 1933 or 1934 any amount on account of the receipt by them of the shares of Associates stock.

The certificates of stock for the shares of the retail corporations owned by Rosenthal Company and the certificates for the shares of stock of Associates could not be issued without the signature of Goldnamer as an officer of the two corporations. His secretary urged him frequently during the latter part of the year 1933 to attend to these matters but he neglected to do so until January and March in the year 1934, as stated above.

Upon these facts the Commissioner determined that the taxpayers received the stock of Associates in March, 1934 as a dividend distribution by Rosenthal Company, and that the distribution represented taxable income in that year. But the Board held that the stock of Associates was acquired by the taxpayers and became unqualifiedly subject to their demand on August 15, 1933 and that therefore there was no taxable distribution to them in 1934. In passing upon the evidence and the inferences to be drawn therefrom the Board said that Rosenthal Company not only decided and intended to distribute the stock of Associates to its shareholders in 1933, but voted at its meeting on August 10, 1933 to make the distribution on August 15, 1933 and thereby earmarked and segregated the Associates stock from its other assets and became obligated to pay the dividend on that date. In reaching this conclusion the Board expressly referred to the terms of the resolution of August 10, 1933; the testimony of Goldnamer, the accountant and the attorney, who were the active participants in the plan of reorganization, and made mention also of the evidence of the entries on the books of the two corporations outlined above. The Board recognized that these entries furnished some evidence in support of the Commissioner's contention but concluded that the book entries must yield to the established fact that the ownership and unrestricted command over the stock passed to the taxpayers on August 15, 1933.

Accordingly, we have the finding of fact, based upon substantial evidence and binding upon us, that the Rosenthal Company, in good faith, declared the stock dividend of the Associates stock to be paid to the Rosenthal Company's stockholders on August 15, 1933; and the only question for decision is whether this action was sufficient to effect the transfer at that time, although the certificates for the Associates stock were not issued or delivered to the Rosenthal Company's stockholders until 1934. It is true that the Commissioner also contends that the date, August 15, 1933, in the resolution of the directors of the Rosenthal Company, merely indicated the date when the recipients of the dividend should be identified as stockholders of the Rosenthal Company by reference to its records; but this contention is so clearly untenable that it does not call for discussion.

We come at once to the heart of the Commissioner's case. It does not seem to be denied that stock certificates are only evidence of ownership, and that failure to deliver possession of the certificates does not of itself prevent the passing of title to stock from an owner to an assignee, if such is the intention of the parties; nor is it denied that this rule has been applied in income tax cases. Appeal of Young, 6 B. T.A. 472, 509, 510; Hoffman v. Commissioner, 2 Cir., 71 F.2d 929; Sherwood v. Commissioner, 8 B.T.A. 103; Swenson v. Commissioner, 14 B.T.A. 675; Commissioner v. Scatena, 9 Cir., 85 F.2d 729, 732. But the Commissioner says that this rule is an irrelevant abstraction in this case, which must be decided upon the specific language of the controlling statute and regulations, as interpreted by the courts. It is pointed out that § 42 of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts, pages 496, 679, require a taxpayer on a cash receipts and disbursements basis to include all items of gross income in his return for the tax year in which he receives them; that § 115(a) of these Acts, 26 U.S.C.A. Int. Rev.Acts, pages 520, 703, defines a dividend as any distribution by a corporation to its stockholders, in money or other property; and that all regulations since 1921 have declared that a dividend is taxable in the year in which it becomes unqualifiedly subject to the stockholder's demand. To support this argument the Commissioner cites a number of cases which will now be considered.

In Mason v. Routzahn, 275 U. S. 175, 48 S.Ct. 50, 72 L.Ed. 223, it was held that a dividend paid in 1917 upon profits earned in 1916 should be deemed a distribution made in 1917 under a statute which made a distribution to a stockholder a part of the annual income of the distributee "for the year in which received"; but that decision is not helpful here because the dividend then under consideration, although declared

in 1916, was made payable in 1917 as is shown in the recital of facts in the opinion of the Sixth Circuit at 13 F.2d 702.

 Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216, related to the taxation of dividends declared in a given year and payable on December 31 of that year, where the dividend checks were purposely withheld from the stockholders in accordance with an invariable practice so that they would not be received by the stockholders until the following year. It was held that under the circumstances the dividends did not become unqualifiedly subject to the stockholder's demand within the intendment of the relevant regulation, and were not received within the intendment of the statute until the checks were "received". See also Commissioner v. Bingham, 6 Cir., 35 F.2d 503; Commissioner v. Adams, 1 Cir., 54 F.2d 228; Saenger, Inc. v. Commissioner, 5 Cir., 84 F.2d 23; Tar Products Corp. v. Commissioner, 3 Cir., 130 F.2d 866. The rule to be deduced from these decisions is that a dividend declared and made payable in a given year is taxable in that year unless the intention of the corporation is made manifest, as by the practice of mailing the checks on the last day of the year, to withhold actual payment until the subsequent year. In the pending case the dividend was declared in 1933 and was made payable in 1933 so that it then became unqualifiedly subject to the stockholder's demand, and consequently was not taxable at all, since it fell within the description of a distribution of stock on reorganization exempted by § 112(g) of the statute.[1]

It it also suggested by the Commissioner that in modern transactions involving transfer of stock the delivery and possession of stock certificates assume great importance under the Uniform Stock Transfer Act and in the determination of the title to shares by the decisions of the courts; and therefore, it is said that in tax matters no weight should be given to the general rule that one may be a shareholder without holding a certificate of stock. These practical considerations may not be ignored in many situations, but as between a corporation and its shareholders they do not prevent an assignment to the shareholders of corporate stock owned by the corporation without delivery of the stock certificates; nor do they prevent the application to dividends in tax cases of the long established rule that a dividend is deemed to have been received in the year in which it becomes unqualifiedly subject to the stockholder's demand.

Affirmed.

---

[1] The following cases were also referred to in the Commissioner's argument but they do not support his contention. Ramapo v. Commissioner, 2 Cir., 84 F. 2d 986, to be considered in connection with Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50; Hines v. United States, 7 Cir., 90 F.2d 957; Schinebro, Inc., v. Commissioner, 2 Cir., 131 F.2d 504; Hadley v. Commissioner, 59 App.D.C. 139, 36 F.2d 543.