Fred J. Tabery and Leone M. Tabery v. Commissioner.
Tabery v. Commissioner
Docket No. 4347-62.
United States Tax Court
T.C. Memo 1964-189; 1964 Tax Ct. Memo LEXIS 148; 23 T.C.M. (CCH) 1108; T.C.M. (RIA) 64189; July 13, 1964
Earl C. Crouter, Glenn Roberts, and Ralph H. Moore, Rowan Bldg., Los Angeles, Calif., for the petitioners. Robert L. Gnaizda, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioners' income tax for the year 1960 in the amount of $61,135.93. Petitioners, through an amended return and in their petition for the year 1960, claim an overpayment in the amount of $21,942.71. The principal issue for decision is whether the Tabery Corporation, a corporation whose stock in owned 100 percent by petitioner Fred J. Tabery, redeemed, as that term is defined in section 317(b) [1] of the Internal Revenue Code *150 of 1954, 80 shares of its stock from petitioner on July 31, 1960. If this issue is decided in the affirmative, then a secondary issue arises concerning whether the distribution is to be governed by section 302(a) or section 301. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners Fred J. Tabery (hereinafter referred to as petitioner) and Leone M. Tabery are husband and wife with their residence at 4443 Gould Avenue, Pasadena, California. They filed their original joint income tax return for the year 1960 with the district director of internal revenue at Los Angeles, California. They filed their amended joint income tax return for the year 1960 on March 9, 1962, with the district director of internal revenue at Los Angeles, California. The Tabery Corporation (hereinafter referred to as Tabery) is a California corporation incorporated on May 24, 1933. Tabery's principal business is the decoration, operation, and promotion of trade association shows and the construction of street and building displays throughout the United States. Tabery's office *151 is located at 3443 South Hill Street, Los Angeles, California. Petitioner acquired 124 shares of stock in Menard Decorators, Inc., on July 31, 1933. The total authorized number of shares of stock of Menard Decorators, Inc., was 250. On January 26, 1944, petitioner acquired another 124 shares of stock in Menard Decorators, Inc., from Henry W. Menard. During the year 1944 petitioner acquired ownership of the remaining 2 shares of Menard Decorators' authorized stock. Thereafter, petitioner had the name of Menard Decorators, Inc., changed to Tabery. The certificates held by petitioner were not exchanged and they still show the name of the corporation as Menard Decorators, Inc. Petitioner has been the sole stockholder and president of Tabery since 1944. Petitioner is a cash basis taxpayer using the calendar year while Tabery is an accrual basis taxpayer using a fiscal year ended July 31. Petitioner since 1946 and throughout 1960 individually owned a five-story commercial building known as the Plan Room Building, located at 1417 Georgia Street, Los Angeles, California. This building was physically located about 25 city blocks from the office of Tabery. Petitioner rented the office *152 and loft space in the Plan Room Building to commercial tenants. In 1957 petitioner decided to remodel, renovate, and air-condition the Plan Room Building. Inasmuch as Tabery was a licensed contractor and maintained a permanent work force of carpenters, designers, and painters, petitioner decided to have Tabery perform the major portion of the renovating work. An account was carried on the books of Tabery entitled "Job Account Receivable," which reflected the charges and credits relating to the work on the Plan Room Building. Tabery charged petitioner $201,025.16 for the work on the building. The work was completed by March 1, 1960. By March 31, 1960, the "Job Account Receivable" charges had been reduced to $116,025.16 through credits to this account in the amount of $85,000. Tabery also maintained a general ledger account entitled "F. J. Tabery Drawing Account No. 152." This account reflected withdrawals made by petitioner from Tabery and repayments thereto. John W. Christopher (hereinafter referred to as John) was employed by Tabery from February 1951 to July 1961. Thoughout the calendar year 1960 John was secretary of Tabery. John's other duties included office manager, purchasing *153 agent, and accountant. John was responsible for the bookkeeping of Tabery and also the preparation of its tax returns. Louis M. Goodholme (hereinafter referred to as Louis) has been an employee of Tabery since 1933. Since about 1941 and throughout 1960 Louis was treasurer of Tabery. Louis and John worked together in maintaining the books and records of Tabery. Louis has been responsible for all tax matters of Tabery since 1933. During 1960, the board of directors of Tabery consisted of petitioner, John, and Louis. Tabery possessed a corporate minute book. However, no entries were made in this book since 1945. The board of directors of Tabery met at least once a year. The meetings were very informal and usually just consisted of a roundtable discussion in petitioner's office. There was no advance notice given of the meetings. Notes were rarely taken at any of the meetings. Sometime after March 1, 1960, but before July 1, 1960, petitioner, John, and Louis discussed the ways in which petitioner could repay his indebtedness to Tabery. One suggestion was that petitioner borrow the money from an outside source. Another suggestion made by John and Louis was that petitioner transfer *154 some of his shares of Tabery stock to Tabery. The number of shares would depend upon the value of the stock as of the time of transfer. Louis determined the book value of one share of Tabery stock to be worth $1,400. This value was arrived at by taking into account the cash in banks, accounts receivable, and inventories. This was accepted by the petitioner and John, and it was agreed that petitioner would transfer 80 shares of stock to Tabery in return for the cancellation of his indebtedness to the extent of $112,000. Petitioner wanted legal advice regarding this proposed sale. John and Louis contacted an attorney who had performed legal services for Tabery in the past, regarding the proposed sale. After contacting the attorney, John and Louis again discussed the matter with petitioner, who agreed to transfer his stock to Tabery. To record the transfer, the following journal entries on the books of Tabery were made on July 31, 1960, by John with the approval of the board of directors, including petitioner: (1) Debit: Tabery Drawing Account
$116,025.16
Credit: (Job) Accounts Receivable
$116,025.16
To transfer from Accounts Receivable to Tabery Drawing,
Invoice No. 9191 at 3/1/60 in the amount of $73,025.16 and
balance at 7/31/58 of $43,000 - Plan Room Building
(2) Debit: Treasury stock
$112,000.00
Credit: Tabery Drawing Account
$112,000.00
To record the purchase from Tabery [petitioner] of 80 shares
at $1,400.00 stock Tabery Corporation, value $1,400.00 per
Board meeting dated 7/1/60.
*155 John prepared the income tax return of Tabery for the year ended July 31, 1960. One of the assets on the balance sheet of Tabery was treasury stock in the amount of $112,000. The return was prepared with the approval of Louis. John helped in the preparation of petitioner's income tax return for the calendar year 1960. The transaction regarding the 80 shares of Tabery's stock was reflected on petitioner's return as a long-term capital gain. Petitioner was aware of the fact that his return reflected the transfer of stock to Tabery. Both petitioner and Tabery were of the impression that a transfer of stock had taken place as of July 31, 1960, which impression was consistent with their intentions. Petitioner left his shares of stock in Tabery in a vault located on the premises of Tabery. The 80 shares of stock transferred by petitioner to Tabery were not physically delivered to Tabery. Petitioner would have physically delivered the stock certificates to Tabery if he believed this was necessary to complete the transaction. Sometime in February 1961 a revenue agent began an investigation of Tabery's return. Inquires were made regarding petitioner's income tax return for the year 1960. *156 In May 1961 after petitioner filed his 1960 return, he was informed by the examining agent that the transfer of stock to Tabery in return for the cancellation of his indebtedness would be considered a dividend taxable at ordinary income rates. Petitioner had hoped that the transfer of stock would result in a capital gain so that he could pay off his indebtedness to Tabery at the least cost to him. In view of the revenue agent's position regarding the transaction, Tabery, as of July 31, 1961, had two journal entries recorded on its books reversing the two entries made on July 31, 1960, with the following explanation: "To reverse July 31, 1960 journal entry 268 made in error." After the receipt by petitioner of a 10-and a 30-day letter from the Commissioner, he filed an amended return for the year 1960. The amended return was identical in all respects with the original except that the transfer of stock to Tabery was omitted. Tabery also filed an amended return for its fiscal year ended July 31, 1960, to reflect the second set of journal entries. Both the petitioner's and Tabery's amended returns were filed March 9, 1962. Sometime in June 1961 petitioner discussed with certain key *157 employees the possibility of their purchasing stock in Tabery. These discussions took place eleven months after petitioner had transferred 80 shares of stock to Tabery. Nothing ever came of those discussions. Tabery has declared and paid dividends to petitioner for the fiscal years ended July 31, 1955, through and including July 31, 1961, of $15,000 per annum. The accumulated earned surplus of Tabery as of July 31, 1960, was $183,796.31. Ultimate Findings of Fact Tabery acquired 80 shares of its stock from petitioner on July 31, 1960. The distribution by Tabery to petitioner constitutes a distribution essentially equivalent to a dividend. Opinion Petitioner contends that he intended to sell 80 shares of his stock to Tabery but that a sale was never consummated. He argues that since there was no formal delivery of the stock to Tabery there can be no sale. Respondent maintains that the facts of this case show that a sale was consummated and that the shares of stock were at least constructively delivered to Tabery. We agree with respondent. Whether a sale of stock was consummated *158 depends upon all the facts and circumstances, including the intention of the parties. Thal v. Commissioner, 142 F. 2d 874 (C.A. 6, 1944), reversing a Memorandum Opinion of this Court. This Court cited with approval Thal v. Commissioner, supra, in Bank of America National Trust & Savings Assn., 15 T.C. 544, 555 (1950), affd. per curiam 193 F. 2d 178 (C.A. 9, 1951). The mere failure to deliver the stock certificates will not prevent the passing of title to the stock if such is the intention of the parties. Helvering v. Kaufmann, 136 F. 2d 356 (C.A. 4, 1943), affirming 46 B.T.A. 924 (1942); Hertz Drivurself Stations v. Ritter, 91 F. 2d 539 (C.A. 9, 1937); Hoffman v. Commissioner, 71 F. 2d 929 (C.A. 2, 1934), reversing on this issue 28 B.T.A. 1264 (1933). This Court accepted and cited with approval Hoffman v. Commissioner, supra, in Grover C. Ligon, 37 B.T.A. 763, 766 (1938). After considering all the facts and circumstances of the case based upon the evidence of record, we are convinced that petitioner did in fact sell 80 shares *159 of stock to Tabery on or before July 31, 1960. We are persuaded by the following facts: Petitioner intended to sell his stock in Tabery to the latter. As a member of the board of directors of Tabery, he discussed the proposed sale and purchase with the other members of the board on several separate occasions. The advice of an attorney was solicited regarding the sale. An evaluation was made of the book value of the shares of stock. Journal entries regarding the sale were made with the approval of the entire board of directors, including petitioner. The corporate income tax return was prepared and filed recording the purchase of stock. Petitioner's individual income tax return was filed reporting the sale as a long-term capital gain. This was done with petitioner's knowledge and full consent. Cf. Jacob M. Kaplan, 21 T.C. 134 (1953). Petitioner's return was filed in April 1961, almost nine months after the sale took place and at a time when he felt a completed sale had taken place. Everyone involved treated the sale as a completed transaction until a revenue agent began to audit both the corporate and individual returns. Then and only then did a question arise as to the *160 validity of the sale. Quickly thereafter the journal entries were reversed and amended returns were filed. We find no merit to the argument made by petitioner that under California law a sale did not take place. [2] We have examined the statutes of California as well as the case law and have found that under some circumstances title to shares of stock may pass without delivery of the certificates. Robbins v. Pacific Eastern Corporation, 65 P. 2d 42 (Calif. 1937). As between the parties to the transaction, it is not essential to the transfer of shares of stock that a certificate be delivered. Kirkpatrick v. Tapo Oil Co., 144 Cal. App. 2d 404 (1956), 301 P. 2d 274. Furthermore, mere irregularities in a transaction affecting a family or closely held corporation do not affect their validity. Kauffman v. Meyberg, 59 Cal. App. 2d 730 (1943), 140 P. 2d 210. In these cases the courts looked at the substance of the transactions and disregarded mere irregularities in paper work. Crane Valley Land Co. v. Bank of America N.T. & S.A., 182 Cal. App. 2d 166 (1960), 5 Cal. Rptr. 731. *161 Finally, petitioner is not in a position to take advantage of his own failure to comply with State law to avoid the effect of Federal taxing statute. Lodi Iron Works, 29 T.C. 696 (1958); Crane Valley Land Co. v. Bank of America N.T. & S.A., supra.
The stock certificates were physically located on the premises of Tabery and were available for actual delivery if petitioner felt this was necessary to complete the sale. The consideration for the shares, the cancellation of petitioner's indebtedness, was received by petitioner on July 31, 1960. Cf. Bonsall v. Commissioner, 317 F. 2d 61 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court. Under these facts, we hold that the stock was at least constructively delivered to Tabery so that a sale was consummated by July 31, 1960. Cf. Scientific Instrument Co., 17 T.C. 1253 (1952), affd. per curiam 202 F. 2d 155 (C.A. 6, 1953). The case of Thal v. Commissioner, supra, relied upon by petitioner is distinguishable from the present case. In Thal, the taxpayer, the 100 percent owner of the stock of the Joseph Thal *162 Company, offered to transfer to his company certain shares of stock in another corporation in return for reduction of an indebtedness owed his company. Book entries were made to record the transfer but no delivery was made of the stock. At a later date taxpayer agreed to reacquire the stock from his company. The question arose concerning the basis of the stock. The Court of Appeals held that since the taxpayer kept the stock and enjoyed all the incidents of ownership the transactions with his company were to be ignored for tax purposes. All we have here, the Court of Appeals went on to say, are book entries which are not sufficient to support a transfer of stock. In the present case, we are concerned with petitioner's stock in Tabery and not stock of some other unrelated corporation. We also have as set forth, supra, more than just book entries to indicate that a transfer of stock took place. For the same reasons, the case of Commissioner v. Chandler, 89 F. 2d 332 (C.A. 9, 1937), affirming 32 B.T.A. 720 (1935), cited by petitioner, is not applicable to the instant case. Petitioner next argues, if a sale is found to have taken place, that the cancellation *163 of his indebtedness by Tabery did not constitute a distribution which was essentially equivalent to a dividend under section 302(b)(1). Respondent, on the other hand, contends that under the facts of this case the distribution must be considered to be essentially equivalent to a dividend. We agree with respondent. Section 317(b) provides that stock shall be treated as redeemed by a corporation if its own stock is acquired from a stockholder in exchange for property. The term "property" includes an indebtedness owed to the corporation. Section 1.317-1, Income Tax Regs. Accordingly, Tabery redeemed 80 shares of its stock from petitioner. Section 302(a) provides that if a corporation redeems its stock and if section 302(b) applies, then the redemption shall be treated as a distribution in part payment in exchange for the stock. Therefore, any excess of the amount distributed over the shareholder's basis in the stock redeemed would be taxed at the favorable capital gain rates. However, section 302(d) states that if section 302(a) does not apply then the redemption shall *164 be treated as a distribution of property to which section 301 applies. This means that the distribution will be treated as a dividend, fully taxable as ordinary income to the extent of the corporation's earnings and profits. The only part of subsection (b) of section 302 which need be considered in this case is paragraph (1) thereof, [3] which provides that a redemption will be governed by section 302(a) "if the redemption is not essentially equivalent to a dividend." It is recognized in the case law and in the regulations that the question as to whether a redemption is essentially equivalent to a dividend depends upon the facts and circumstances of each case. Ralph L. Humphrey, 39 T.C. 199 (1962); Thomas Kerr, 38 T.C. 723 (1962), affd. 326 F. 2d 225 (C.A. 9, 1964); Earle v. Woodlaw, 245 F. 2d 119 (C.A. 9, 1957); section 1.302-2(b), Income Tax Regs. The courts have evolved certain judicial criteria which they have found helpful *165 in determining whether a particular distirbution is or is not essentially equivalent to a dividend. We have had recent occasion to list these factors. See Isidore Himmel, 41 T.C. 62, 70 (1963); Thomas Kerr, supra, at 730. Although the cases do not seem to lay down a decisive test, it is apparent that one of the most important factors is whether the transaction resulted in any substantial change in the proportionate ownership of stock held by the recipient of the distribution. Bradbury v. Commissioner, 298 F. 2d 111 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court. In the instant case, petitioner was the sole stockholder of Tabery and it was through his actions that the redemption took place. The real, if not the only, purpose behind the redemption was a shareholder purpose, i.e., the reduction of petitioner's indebtedness to Tabery. J. Milton Sorem, 40 T.C. 206 (1963), on appeal (C.A. 10, Aug. 13, 1963). Tabery did not adopt any plan to contract its business, nor did the transaction result in a contraction of corporate business. Tabery had sufficient earnings and profits to more than cover the distribution. After *166 the redemption, petitioner still owned 100 percent of Tabery's issued and outstanding stock. The situation is substantially the same as if Tabery had distributed a cash dividend and petitioner had used the funds to reduce his debt. Aloysius J. McGinty, 38 T.C. 882 (1962), affd. 325 F. 2d 820 (C.A. 2, 1963). The net effect of the distribution to petitioner amounted to a taxable dividend. Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court. Under the foregoing circumstances, we hold that the acquisition by Tabery of 80 shares of its common stock from petitioner in partial cancellation of his debt to it constitutes a distribution essentially equivalent to a taxable dividend. Cf. Hirsch v. Commissioner, 124 F. 2d 24 (C.A. 9, 1941), affirming 42 B.T.A. 566 (1940). Petitioner claims that there was a legitimate corporate business purpose for the redemption of the stock. He argues that the redemption was to provide stock for a proposed employee stock purchase plan. This being the case, he then maintains that a distribution under these circumstances is not essentially equivalent *167 to a dividend, citing Commissioner v. Snite, 177 F. 2d 819 (C.A. 7, 1949), affirming 10 T.C. 523 (1948), and John A. Decker, 32 T.C. 326 (1959), affd. per curiam 286 F. 2d 427 (C.A. 6, 1960). We do not agree with petitioner nor do we feel that the cited cases aid the petitioner in this case. Tabery redeemed its stock from petitioner on or before July 31, 1960. Any discussion of a proposed stock purchase plan for employees did not materialize until June 1961, almost eleven months after the redemption and one month after respondent began his examination of petitioner's 1960 income tax return. Furthermore, petitioner testified that the sole purpose for the redemption was to reduce his indebtedness to the corporation. Clearly, the facts of this case do not indicate that the stock was redeemed to enable certain key employees to become shareholders, as were the facts in both the Snite and Decker cases, supra. We do not pass on what the results would be if an employee stock purchase plan had been considered by petitioner before the redemption. However, the mere existence of a single business purpose in and of itself is not conclusive *168 for the purpose of determining that the transaction does ont result in a distribution essentially equivalent to a taxable dividend. Thomas Kerr, supra; Heman v. Commissioner, 293 F. 2d 227 (C.A. 8, 1960), affirming 32 T.C. 479 (1959); United States v. Fewell, 255 F. 2d 496 (C.A. 5, 1958). Considering all the factors present in this case, it is our opinion that the practical effect of the redemption of its stock by Tabery was the same as if a dividend had been declared and paid to petitioner, Thomas Kerr, supra, and we so hold. Decision will be entered for the respondent. Footnotes
1. All references herein are to the Internal Revenue Code of 1954, except as otherwise specified.↩
2. Sec. 2408, Cal. Corp. Code↩.
3. Petitioner does not argue that the specific requirements for qualifying the transaction for capital gains treatment under sec. 302(b)(2), (3), and (4)↩ have been met.