EARL F. SMITH, ADMINISTRATOR, ESTATE OF JOHN WESLEY SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39682. Promulgated May 15, 1931.

*J. Murray Chenoweth, Esq.,* and *Earl B. Barnes, Esq.,* for the petitioner.

*W. F. Gibbs, Esq.,* for the respondent.

OPINION.

Love: On both issues, we hold in favor of the Commissioner.

John Wesley Smith died February 5, 1927; the determination of the value of the gross estate of the decedent falls, therefore, under Title III of the Revenue Act of 1926. Respondent contends that while decedent gathered his five children around him on Christmas Day, December 25, 1923, and told them that he was giving them this stock in the Prairie Oil and Gas Company, yet his subsequent acts show that he intended that they should have the stock at the time of his death, but not before then. Respondent makes no point that the alleged gift was made in contemplation of death, nor is there, under the statute, any presumption that it was so made.

That part of the Act which, under the circumstances, is germane, follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, &ast; &ast; &ast; intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. &ast; &ast; &ast;

The question that is here raised for our determination is whether the transfer of this property was, in law, a gift *inter vivos*, or whether it was some other kind of a transaction.

The rule that no *gift* is made where the absolute transfer of title is to become effective at some time in the future is so thoroughly established that it is unnecessary to quote authorities. No consideration whatever is necessary to support a transfer of title by gift; in fact, if there be a good, or valuable consideration there is no gift. Therefore, the "gift" of property to become effective in the future is no more than a promise or agreement to make a gift, which promise or agreement made without a valuable consideration, is void *ab initio;* nor would the consideration of blood or natural affection be sufficient to support such a promise. *In re James*, 40 N. E. 876; *In re Campbell's Estate*, 47 Am. Dec. 503. To constitute a valid gift, *inter vivos*, the transfer must be voluntary, gratuitous, and *absolute;* and as applied especially to personal property, it is the transferring of all right to and the *possession* of such property, whereby the donor divests himself of, and the donee takes, *immediately*, all right and title thereto. *Williamson* v. *Johnson*, 20 Atl. 279; *Walsh's Appeal*, 15 Atl. 470. In *Walsh's Appeal* the Supreme Court of Pennsylvania, in defining a gift, said:

There must be a purpose to give. This purpose must be expressed in words or signs, and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift *inter vivos;* \* \* \*

Though counsel for respondent quotes article 18 of Regulations 70, which provides that a transfer not amounting to a bona fide sale for an adequate consideration in money or money's worth is taxable where decedent reserved to himself during life the entire income from the property transferred, respondent does not rest his case upon that contention alone; nor do we here hold in reaching our conclusion, that unconditional remainder interests in personal property may not be disposed of by gift or otherwise by the owner thereof, after reserving to himself an intervening life estate in the income from such property.

The proposition advanced by petitioner is that the reservation by the donor of a life interest in property disposed of by *inter vivos* gift, *no power to revoke or modify such gift being reserved*, does not operate under the Revenue Act of 1926 to make the transfer one intended to take effect in possession or enjoyment at or after the donor's death.

We might find ourselves in agreement with that contention as a broad proposition of law, but in the instant case our inquiry is narrowed by the accompanying circumstances to the consideration of

that part of the general proposition above which we have italicized, that is to say, whether the facts before us are so persuasive as to induce us to the conviction that on December 25, 1923, decedent actually and irrevocably *gave* to his five children his stock in the Prairie Oil and Gas Company, and we must admit that we do not find them so.

If actual delivery of the stock did not take place at the family gathering on Christmas Day, 1923, then decedent's words " I am giving you children my Prairie Oil and Gas stock " amount to no more than a declaration of intention, or a promise, and petitioner testified that there was no delivery of any certificates on that day, and that he did not recall how soon thereafter decedent had placed them in petitioner's safe-deposit box at the bank, but it was " within three months, anyhow." We are of the opinion that, if there were no other grounds, the failure of delivery on December 25, 1923, such delay not being explained, would in itself compel us to hold that there was no completed gift on that day—and no other date prior to decedent's death is even so much as claimed by petitioner, but there are other compelling considerations.

We are convinced by petitioner's own testimony that there was never even a constructive delivery of the stock in question prior to the date of his father's death on February 5, 1927. Petitioner testified that while his children were gathered around him on Christmas Day, 1923, his father, after making the statement above quoted, said : " I am putting the certificates in Earl's lock-box at the bank, *in a folder I have* with a compartment with each of your names on it; this stock *will be* divided equally among you five children." On cross-examination, petitioner testified that his father had said (quoting decedent indirectly) that the stock " would be placed in my lock-box in the bank *in a folder that he had*, each of our names, in each section, and the stock would be in equal certificates—that is, would be divided equally." We have italicized the words which are significant and which confirm us in our belief that the delivery of this stock was never completed, nor the gift effectuated before the father died. The folder in question was introduced in evidence by petitioner. It is a substantial, though somewhat worn, leather or leatherette case containing five heavy Manila envelopes, such as are used to contain and record life insurance policies, secured in the folder by a knotted tape, and the whole closed with a snap fastener. Each envelope bears the name of one child, not as " Owner " but as *"Beneficiary."* There is no evidence that decedent ever during his lifetime parted with the ownership of this folder; it was *his*, and accordingly, whether it was kept in his own separate possession, or whether it was kept in either of the safe-deposit boxes to both of

which decedent and petitioner had access, it and its contents were under the legal control and dominion of its sole owner, and there is nothing in the record to show that petitioner or his sisters could extract the certificates from the folder or even open the folder and examine them in their separate envelopes without committing a trespass. The sisters of petitioner did not even know of their own knowledge that the certificates were in his box and in their father's folder. Decedent not only had legal dominion and control over the contents of this folder, but he actually exercised that dominion and control when in April, 1924, he extracted the $100 par certificates for six hundred shares from this folder in his son's safe-deposit box, and exchanged them, without consulting with, or the knowledge of, the alleged donees, for $25 par certificates for twenty-four hundred shares, without even then changing the name of the record holder, Thomson and McKinnon.

In *Mahan* v. *Plank*, 289 Fed. 722, cited by respondent, it was held that in an action to establish a gift *inter vivos* of a stock certificate, evidence that said certificate was issued to decedent's son, unaccompanied by evidence of his possession, but, on the contrary, showing that possession remained in the giver, does not necessitate a finding of a gift. We think that the language used by the court in that case is of peculiar interest here. The court said:

To hold and enjoy one's property, and yet to provide for its passage to children, unburdened by inheritance tax or administration expenses, has been the task and the worry of many an accumulator during the later years of his life. The decedent could have easily transferred this property, and made doubt and dispute impossible. To have done so, however, would have necessitated his surrendering the title to, and the control of, his property, and all the enjoyment that was incident thereto. The rights and privileges of ownership, however, he wished to retain.

The books are full of authorities all to the same effect, and we do not think that further extensive citations would serve any useful purpose, for as the court said in *Bauernschmidt* v. *Bauernschmidt*, 54 Atl., at page 644, quoting *Bunn* v. *Markham*, 7 Taunt. 224, " There is no case which decides that the donor may resume the possession and the donation continue."

The courts have held that a gift *inter vivos* to a child by an ancestor who dies intestate is prima facie an advancement. Such a presumption, however, fails in this case for the same reason that, in our opinion, petitioner's contention that there was a valid gift fails, i. e., that there was no actual, absolute, and irrevocable transfer of possession and the legal title to the property, and such a transfer is as essential in the case of an advancement as in that of a gift.

Therefore, we hold that the shares of stock in question here never ceased to form a part of decedent's estate before the time of his death on February 5, 1927, in which estate they were properly included by the Commissioner for estate-tax purposes.

The remaining issue may be disposed of in a few words. That portion of the Revenue Act of 1926 which applies is section 301:

(b) The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304.

The Commissioner credited the amount actually paid in cash. Petitioner contends that he should have credited the amount thus actually paid *plus the discount allowed* by the States of Indiana and Ohio for payment within one year from the accrual of the tax. Petitioner contends that the total · amount of inheritance taxes assessed was *satisfied by the estate*. But it was satisfied by the payment of only 95 per cent of the assessment, as provided by statute. The Indiana Inheritance Tax Act upon which petitioner relies, provides, as quoted by him:

If such tax is paid within one year from the accrual thereof [i. e., the time of the transfer], a discount of five per centum shall be allowed and deducted therefrom.

Such a provision by the State of Indiana can not be deemed a payment by the estate of the 100 per cent. The law of Indiana does no more than provide that the tax paid within one year from the date of death shall be 95 per cent of the amount that will be due if paid after that date. In any event, and irrespective of the provisions of any State law, we hold that the words "actually paid," as used and repeated in the Federal statute, mean actually paid in cash by the estate of the deceased.

*Judgment will be entered for the respondent.*