## OWEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6323.

Circuit Court of Appeals, Ninth Circuit.
Oct. 26, 1931.

Robert T. Jacob, of Portland, Or., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and A. H. Conner, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C.), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

SAWTELLE, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals determining that a deficiency exists in estate taxes due from the estate of petitioner's intestate, under § 402(a) of the Revenue Act of 1921, 42 Stat. 227, 278, that provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. * * *"

Frank G. Owen, the decedent, was a citizen and resident of Oregon. He died intestate on June 26, 1922, and Leila S. Owen, his wife, is administratrix of the estate.

For some time prior to his death, decedent and his wife were having marital difficulties. A. E. Reames, a witness, who acted as attorney for the decedent in the latter's lifetime, testified as follows: "Mr. Owen brought to me a list of these securities that are designated and set out in the exhibit, showing the manner in which he and Mrs. Owen had agreed the ownership of the securities was, and stated at that time that he considered her to be a half owner in all of his property. I told him that they could not agree on terms of divorce, but might separate their property, and I had him go home and sit down at the table with her and agree upon a division of these assets, and he brought me that list, and I then advised him the best way to do was create a trust between the two as the owners of the property, and escrow it under the First National Bank, under the terms of that instrument. I explained to him that it would be necessary that both he and his wife should part with absolute control over the property and leave it to the instrument and the trustee and to be handled according to the terms of the trust instrument."

In pursuance of this advice, Mr. and Mrs. Owen executed two agreements on April 27, 1920.

The first of these, the "Trust Agreement," among other things provided that: "The parties hereto do hereby create the First National Bank of Medford, Oregon, a trustee as herein provided, and do deposit with such trustee" certain enumerated securities; the bank was to hold the securities for a year and distribute any moneys accruing therefrom to the bank accounts of each of the parties in proportion to the stockholding before enumerated; the bank was to make such distribution of said certificates at the end of a year as should be agreed on by the parties, and, in the absence of any such agreement within 30 days after the expiration of one year from the date of the agreement, the trustee was to cause the corporations to issue certificates to each of the parties in the proportion thereinbefore enumerated; "all of the certificates deposited herewith are assigned by said Frank G. Owen in blank. In those instances in which the entire certificate under this distribution goes to the second party authority is given said trustee to so write in the name of Leila S. Owen as assignee in lieu of surrendering this certificate and issuance of a new one if she should so prefer. Should the said certificate be distributed between the respective parties hereto as herein provided, then said Bank has authority to surrender the original certificate * * * and cause new certificates to be issued to the respective parties as herein provided, and shall promptly procure such new certificates and *hold them subject to the order of the parties respectively entitled thereto as their interests are herein shown*; "if at the expiration of one year from this date or within the thirty days immediately following the parties should give direction to said trustee in writing for any other or different disposition of said certificates said trustee shall make such distribution accordingly." (Italics our own.)

In May, 1921, the parties notified the trustee of their desire to continue the trust for one year, and in April, 1922, a further renewal was made.

The second agreement, the "Social" or "Secret" agreement, was filed with the attorney in order to avoid public knowledge of the marital difficulties of the parties. Among other things, this agreement provided that: "The parties hereto have this day mutually settled their property interests * * *"; "as a part of said property settlement the parties hereto have this day mutually executed and deposited with the First National Bank at Medford, Oregon, their trustee agreement in which they have deposited certain securities therein mentioned, *which shall and do belong to the respective parties hereto in the proportions as therein designated,* unless other distribution thereof shall be made within the time as in said trust agreement provided"; "the parties hereto have determined to live apart for the period of one year from this date * * *. Such separation for such period is agreed upon to permit the second party hereto to determine from the conduct of the first party during said period of one year whether she will then renew the relationship of husband and wife between the parties, or

whether she will proceed with the procurement of a divorce. In the event of her electing to so procure the divorce the property interests of the respective parties are settled as herein provided. They may, at the expiration of one year and in the event that they do not renew the relationship of husband and wife, make some mutual modification in the distribution of the securities mentioned in the Trust Agreement. But in the absence of such mutual agreement the property settlement shall stand as made herein and as made in said Trustee Agreement." There was further provision that, in the event the income from the wife's securities should be insufficient to meet her financial requirements and those of the two children, then the husband should make further provision for them. (Italics our own.)

This case is not one based upon conflicting evidence, nor one in which the chief question on appeal is the proper delimitation of the powers of this court in view of the authority allowed to the Board of Tax Appeals. Rather is the question one of declaring the law on facts that do not seem to be in dispute, and of determining the proper construction to be placed on the instruments in question. Appellee says in his brief: "The only authority of the Circuit Court of Appeals upon review of its decisions is to modify, reverse, or remand for rehearing if the decision of the Board is not in accordance with law." It is upon this last phrase "in accordance with law" that we rely in our review here.

In its opinion the Board of Tax Appeals said (18 B. T. A. 539): "From the evidence it may be inferred that the decedent owned all the securities up until April 27, 1920, when the agreements were made. The certificates were in his name, and the wife's statement that 'he took the position that the property belonged to us equally' is not demonstrative of her ownership, nor is a vague statement of the lawyer who drew the agreement of any probative force. On that date, decedent did not transfer ownership of the property. He merely deposited the property with the bank and ordered the income distributed as agreed. The wife received an assurance of income for a year and the expectation of ownership in the future upon certain conditions. This is all she had on April 27, 1920, and she received no more before decedent's death."

With this conclusion of the board we are unable to agree. We think that all of the evidence before us must necessarily lead to the conclusion that there was an actual gift of stock by Frank G. Owen to Leila S. Owen.

In the first place, we have the important testimony of A. E. Reames, attorney for both of the parties. We have quoted this statement before, and will not repeat it here, but we do think that it must be given due weight.

There was also the uncontradicted statement to the following effect in petitioner's deposition:

"Together we [decedent and the petitioner] worked out a division of the property. This was done largely by him [decedent] as he knew the property values better than I did. *He took the position that the property belonged to us equally and it was his effort to give me my equal share. This was to be done and provided for in the contracts.* There was no agreement between us that either should get a divorce. He wanted a year to convince me that we should go back together, and this was agreed upon. But *the division of the property was to stand regardless of whether or not we went back together.* At no time, either before or after the settlement, did he make the suggestion that he was retaining any claim in the property that had been determined to be my portion. * * * The question of his death did not enter into the question of my ownership of the property. * * * *The property so set over to me was mine, and my right and title to it did not depend upon any contingency whatsoever.*

"He did not require me to escrow my portion of the property in the bank; this plan was suggested by our said attorney, and put in form by him because the shares of stock represented by some of the certificates belong partly to him and partly to me, and the bank was made the trustee to make the separation of the interests. * * * " (Italics our own.)

There was still the further fact that on February 1, 1921, decedent submitted a financial statement to the First National Bank of Portland, Or., containing a list of his assets and liabilities for the purpose of securing credit, and on February 17, 1921, he filed another financial statement with the First National Bank of Medford, Or., for the same purpose. In neither of these statements were the securities belonging to the wife listed as assets, showing that decedent recognized them as her property and not his. We think that all of these factors, taken together, must be considered in determining whether or not a gift was made.

We are of the opinion that the language of the agreements and the testimony referred to clearly evidence a delivery by the decedent to the trustee for his wife, which is equivalent to a delivery to her, of the securities listed in her name. In the trust agreement it is said: "At the expiration of one year from this date the said trustee shall make such disposition of said certificates and all of them as shall be mutually agreed upon by the parties hereto. Should they fail to make such agreement within (30) days after the expiration of one year from this date the said trustee shall cause the several corporations out of which the said certificates are issued to issue certificates for the following numbers of shares to the parties hereto, respectively, as follows, to wit. * * * "

This conclusion is strengthened by the language of the "Social" agreement, in which it is said: "And as a part of said property settlement the parties hereto have this day *mutually* executed and deposited with the First National Bank at Medford, Oregon, their trustee agreement in which they have deposited certain securities therein mentioned, *which shall and do belong to the respective parties hereto in the proportions as therein designated,* unless other distribution thereof shall be made within the time as in said trust agreement provided." (Italics our own.)

Thus, in the absence of an agreement to the contrary, it was clearly the duty of the trustee at the expiration of the trust agreement to have certificates of stock issued in the names of the respective parties in the proportions that their interests appeared in the trust agreement. The "other distribution" provided for dealt simply with the contingency that the income from the wife's shares might be insufficient for her needs, in which case it was contemplated that the husband would make further provision, possibly from his stock in trust. The death of petitioner's husband terminated the trust agreement, and it thereupon became the duty of the trustee to have stock certificates issued in her name for the number of shares set aside to her in the agreement.

Respondent contends that the following language of the second agreement evidences an intent that a transfer would be made to petitioner only in the event the parties obtained a divorce: "In the event of her election to so procure the divorce the property interests of the respective parties are settled as herein provided."

However, in our opinion, this sentence in nowise destroys the force and effect of the statement contained in the same agreement, that the securities "shall and do belong to the respective parties hereto," or the significance of the direction in the trust agreement, that the trustee "procure such new certificates and hold them subject to the order of the parties respectively entitled thereto as their interests are herein shown"; nor does it avail against the delivery by decedent of the stock to the trustee for his wife. The paragraph of the agreement from which the quotation with reference to a divorce is taken in nowise attempts to define or determine the rights of the parties in the property involved. It simply narrates the circumstances of the parties and their proposed intentions regarding their future marital relations.

There can be no question of the consummation of the gift. No bill of sale for personal property is required under the Oregon law, and it is not necessary in any jurisdiction that delivery be made to the person to whom the gift is made, or to the transferee. In the case of Grissom v. Sternberger (C. C. A. 4), 10 F.(2d) 764, 766, the court said: "It is not necessary to complete a gift that delivery be made directly to the donee; the delivery may be made to a third person for the benefit of the donee. And where the property is delivered to such third person for the benefit of the donee, with intention that present title and ownership shall pass, and appropriate language is employed to effect such intention, the gift is executed and the third person is constituted a trustee of the donee. [Citing cases.]"

Again in the case of James F. Foster v. Commissioner, 13 B. T. A. 496, the Board said: "There is no contention that the gift was made in contemplation of death. But it is now urged that no gift of the stock was consummated because it is not shown that there was a delivery of the certificates and because there was no transfer on the books of the corporation. There can be no question that a gift is not valid or enforceable until it has been consummated by a delivery of the thing given. An unexecuted gift is nothing more than a promise to make a gift, unenforceable for lack of consideration. But once a gift has been consummated, the rights of the donee become vested. While delivery is essential, manual delivery of the thing given is no more necessary in the case of a gift than in the case of a sale. A deed of gift is as effective to pass title as a bill of sale. In re Cohn [187 App. Div. 392] 176 N. Y. S. 225; Valentine's Estate [122 Misc. Rep. 486] 204 N.

Y. S. 284. See also Matter of Babcock [85 Misc. Rep. 256] 147 N. Y. S. 168. Nor will the failure to record the gift by a transfer of the stock on the books of the corporation prevent title from passing as between the donor and the donee. In re Bullard's Estate [76 App. Div. 207] 78 N. Y. S. 491; Grissom v. Sternberger [C. C. A.] 10 F.(2d) 764 and cases cited."

 We hold that the Board of Tax Appeals erred as a matter of law in holding that there was no proof of the transfer of the property, and erred in including in the tax that portion of the shares that were set apart to Mrs. Owen in the trust agreement. We think the remaining shares are subject to taxation notwithstanding the trust agreement. Cause remanded, with instructions to the Board to eliminate from its judgment those shares that were set apart to Mrs. Owen in the trust agreement.

Reversed.