## WEBB v. COMMISSIONER OF INTERNAL REVENUE.

### No. 70.

Circuit Court of Appeals, Second Circuit

Dec. 11, 1933.

Seth B. Robinson, of New York City, for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

For the year 1925 the petitioner and his wife filed a joint return on the basis of cash receipts and disbursements. As income of the wife, the Commissioner included profit resulting from transactions during the year in stocks carried in a margin account in her name with a brokerage firm, although no money was actually paid to her from the account in 1925. The Board ruled that such profit was properly included. The correctness of this ruling is the only question presented on appeal.

The brokerage margin account was opened in 1919 in Mrs. Webb's name by Mr. Whitney, a friend and neighbor. Having found Mrs. Webb and others playing roulette for small stakes, Mr. Whitney advised them that they could make "real money" by trading in stocks. Mrs. Webb replied that she could not buy stocks, whereupon he said that he would take care of that. Shortly thereafter she received a stock purchase slip from a firm of brokers. Monthly statements were subsequently sent her by the brokers, and at the end of the year an annual statement, which contained a direction to preserve it for income tax purposes. Instructions to the brokers were given solely by Mr. Whitney. Occasionally he would confer with Mrs. Webb in a jesting manner about buying or selling stocks for her account and she would tell him to do whatever he wished. At one time the account accumulated a very large debit balance, and the brokers informed Mr. Webb, in response to an inquiry, that his wife was not liable for it. She never put up, nor was she requested to put up, money or securities for the account, and she never withdrew anything from it. On one occasion prior to 1925 the brokers sent her, at Mr. Whitney's instruction, $2,000 of the profit realized in the account. In 1926 they informed her that Mr. Whitney was going to close it out. She expressed her approval, and the account was thereupon closed, and the resulting profit was paid to her. During the year 1925 the account was credited with dividends and debited with interest on the balance owing to the brokers. There were also sales, and as a result of all entries in the account during that year a profit was shown. It was not, however, paid to Mrs. Webb until the account was closed in 1926.

In a memorandum opinion (not reported), the Board of Tax Appeals found that Mr. Whitney made a gift to Mrs. Webb when he established a trading account in her name and ordered stocks purchased for her account, and that the profit arising out of the sale of these stocks for her benefit during 1925 represented taxable income for that year.

If Mrs. Webb had the legal power to withdraw from the account the profit resulting from the transactions which occurred during 1925, such profit was properly included in her 1925 income. The income tax law prescribes an annual accounting period; hence

a taxpayer, even though reporting on a cash basis, may not defer reporting dividends or profit from sales by failing to withdraw them when available. Washer v. Commissioner, 12 B. T. A. 632, affirmed 35 F.(2d) 1023 (C. C. A. 2); Newman v. Commissioner, 41 F.(2d) 743 (C. C. A. 10); Wright v. Commissioner, 50 F.(2d) 727, 729 (C. C. A. 4). It is the contention of the petitioner that his wife had no control over the brokerage account, and no interest in the profits thereof until Mr. Whitney should direct the brokers to pay them to her; in other words, that no income from the account was available to her during the taxable year in question. It is true the parties understood that Mr. Whitney was to manage the account, and doubtless Mrs. Webb did not consider herself free to withdraw profit therefrom without regard to his wishes. But it does not follow that her legal rights were so circumscribed. The legal relations of broker and customer have been much discussed. It will suffice to refer to Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981, where the law of New York on this subject is reviewed. In purchasing stock, the broker acts as the customer's agent; in advancing money for the purchase, he becomes a creditor; and, in holding the stock to secure his advances, he is treated as a pledgee of the customer's stock, although the customer has never had actual possession of it. Usually, of course, the customer incurs indebtedness to the broker for the money advanced, but we see no reason why the indebtedness may not be incurred by another and the stock held as security for such third person's debt without in any way impairing the relationship of agency between broker and customer in the matter of purchase and sale. In the case at bar the brokers recognized Mrs. Webb as their customer; they carried the account in her name, and sent her statements of all transactions; when Mr. Whitney instructed them to close out the account, they notified her and apparently sought her approval before doing so. At all times they treated the shares as hers. However unlikely it was that she would give instructions independently of Mr. Whitney, we cannot doubt that she had the legal right to do so provided he was not left saddled with a debt. Doubtless it may be assumed that she could not order the account to be closed out at a loss without paying the indebtedness herself, but any order which would result in a profit she could give without regard to Mr. Whitney's wishes, and any such profit she could withdraw, for he had no interest in the profits. Cf. Matter of Peck, 135 Misc. 686, 238 N. Y.

S. 262. Although he supplied the margin or credit which caused the brokers to buy the stock for her, once she ratified the transaction (as she did) she became the broker's principal and entitled to such profits as accrued from a subsequent sale of her shares. Compare the somewhat analogous situation of a gift of a bank account. In re Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71; cf. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531. Even if Mr. Whitney reserved power to close the account at any time and thereby terminate his liability to the brokers, there is nothing to indicate that he reserved any control over proceeds of sale in excess of his indebtedness. There was no power of revocation which could be exercised for the donor's own benefit as in Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, upon which the petitioner strongly relies. Consequently the Board's findings of fact are sustained, and its order is affirmed.