## COMMISSIONER OF INTERNAL REVE-
## NUE v. LEVI.
### No. 8197.

Circuit Court of Appeals, Seventh Circuit.

June 11, 1943.

Rehearing Denied June 29, 1943.

Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Bernard Chertcoff, Dept. of Justice, and J. P. Wenchel and Claude R. Marshall, Bureau of Internal Revenue, all of Washington, D. C., for petitioner.

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers, of Washington, D. C., of counsel), for respondent.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The E. M. Rosenthal Jewelry Co., a corporation of the District of Columbia, hereinafter referred to as the Rosenthal Co., was engaged in the wholesale jewelry business. Outlets for the sale of its jewelry were several retail establishments, most of whose stock it owned. For business reasons, the Rosenthal Co. determined to eliminate its connections with the retail establishments by organizing another corporation, called the General Associates, Incorporated, hereinafter referred to as Associates, with the same number of shares of capital stock as the Rosenthal Co. had, and of the same par value, and to Associates in exchange for its stock and some cash, the Rosenthal Co. would transfer its stock in the retail establishments and some other assets; and then the Rosenthal Co. would distribute as a dividend to its stockholders a share of the Associates stock for each share of stock held in the Rosenthal Co. It was believed that under the scope of Section 112(g) of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev. Acts, page 513,[1] the dividends so declared would not be subject to taxation. Section 112(g) of the Revenue Act of 1932 was not carried into the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 659 et seq.

No books were opened by Associates until January, 1934, and no shares of its stock were issued until March 31, 1934.

---

[1] 26 U.S.C.A. Int.Rev.Acts, page 513.

"Sec. 112. Recognition of Gain or Loss.

\*　　\*　　\*　　\*　　\*

"(g) Distribution of Stock on Reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized."

The Rosenthal Co. retained possession of the shares of stock of the retail companies until March 31, 1934, and until January 31, 1934 collected and credited to itself the dividends received on the stock of the retail companies. The books were afterwards changed to credit these dividends to Associates. A certificate of stock of Associates was issued to the Rosenthal Co. on or about March 31, 1934, and antedated to August 10, 1933, the date of the resolution of the Rosenthal Co. authorizing distribution of this stock of Associates to the stockholders of the Rosenthal Co. This stock certificate from Associates to the Rosenthal Co. was assigned by the latter to its stockholders March 31, 1934. Certificates of Associates stock dated March 1, 1934 were delivered to the stockholders of the Rosenthal Co., and the entries on the books of the Rosenthal Co. showed the dividend was made under date of March 31, 1934.

The taxpayer, respondent herein, was a stockholder in the Rosenthal Co. and received the stock of Associates as a dividend, but did not include it either in her return for 1933 or that for 1934. The Commissioner determined that the stock was distributed to the respondent in the year 1934, and that the amount received was taxable as a dividend of that year, 1934, and he assessed a deficiency. The Board of Tax Appeals refused to sustain the Commissioner, who now prosecutes this appeal.

Under Sec. 112(g) of the Revenue Act of 1932, there is no tax due if the stock was distributed in 1933. If it was distributed in 1934, the tax is due, since, as we have stated, Sec. 112(g) was omitted from the Revenue Act of 1934. The question we have to decide is in which year was the stock of Associates distributed to the stockholders of the Rosenthal Co.?

The respondent takes the position that she became the owner of the stock in August, 1933, when the Rosenthal Co. passed a resolution to transfer the stock in the retail companies to Associates for its stock and approximately twenty thousand dollars in cash, and passed another resolution that the Associates stock was to be distributed to the stockholders of the Rosenthal Co.; the respondent contends that the fact that the certificates of stock, which are only evidence of stock ownership of the retail stores, were not assigned and delivered to Associates and Associates stock was not issued and delivered to the stockholders of the Rosenthal Co. until 1934, made no difference.

The Commissioner does not challenge these abstract legal propositions of the respondent, but says that these abstractions of ownership, legal or otherwise, are not determinative of the question of tax incidence, which is controlled by determination of the fact of when the stock was distributed.

■ This case does not turn upon ownership of the stock. We may admit that on August 15, 1933, the respondent became the owner of the stock in question, and that the certificate is only evidence of ownership. This case turns upon the question of whether the stock in question was distributed in 1933. For the respondent to have the benefit of the 1932 Act, there must be distribution of the stock in 1933, while the Act was still in force. The declaration of the dividend in 1933 was not equivalent to distribution. The most that could be said for that transaction is that the respondent acquired a right to have the stock distributed. Distribution of the Associates stock was not made in 1933, either by the issuance of certificates or by designation thereof upon the books of Associates. These are the usual ways in which stock is distributed. Congress used the word "distributed" in its usual and commonly accepted sense. Webster defines "distribute" as meaning to "divide among several or many; * * * apportion; allot." In August, 1933, there was no division, apportionment, or allotment of the shares of stock of Associates to the stockholders of the Rosenthal Co. Indeed, the resolutions of the directors of the Rosenthal Co. did not purport to distribute the stock of Associates. There were two of these resolutions.[2] Why there were two is

---

2 "Resolved, that this corporation pay to its stockholders of record, on August 15, 1933, a special stock dividend of the stock of General Associates, Incorporated, to be paid the Stockholders of E. M. Rosenthal Jewelry Company, in the same proportion of the stock held by said Stockholders in the said E. M. Rosenthal Jewelry Company."

The second of these resolutions provides: "Resolved that a stock dividend or distribution of the shares of stock held by the Company in the General Associates, Inc., a wholly owned subsidiary,

unexplained. This presented to the Tax Board an ambiguity which it received parol evidence to explain, and it found: "On August 10, 1933, the directors of the Rosenthal Co., in further pursuance of the plan, adopted a resolution authorizing the payment on August 15, 1933, to its stockholders of a dividend consisting alone of the stock of Associates, *to be distributed* to the stockholders of Rosenthal Co. in proportion to the amount of stock held by them in the Rosenthal Co." (Our italics.)

Thus by the Board's finding there was on August 10, 1933 an authorization of a dividend of Associates stock to be paid August 15, 1933 and *to be distributed* to the stockholders of the Rosenthal Co. Nothing more was done until the year 1934. In other words, the distribution contemplated and authorized in August of 1933 did not take place until 1934. The stock of Associates was not distributed, either on the books of Associates or by the Rosenthal Co. or by the issuance of certificates, until 1934. Until then, no steps had been taken which made it possible to issue the stock, and the stock certificates were not issued or the stock books opened until 1934.

█ In August, 1933, the respondent acquired a right to receive distribution of the stock in question. There is a difference between a right to receive distribution, and distribution. Here, the exemption from the tax depends upon the clear showing by the taxpayer that she received distribution of the stock in 1933. Helvering v. Minnesota Tea Co., 8 Cir., 89 F.2d 711, 713. She received only the right to distribution in 1933, but the actual distribution was in 1934.

█ It was the stock of Associates that was being distributed. Associates had no stock to distribute in 1933; in fact, it had no assets in 1933 against which stock could be issued. The only assets Associates acquired were the stock in the retail stores and some other choses in action, and these were not delivered to Associates until 1934. Then it was that Associates for the first time had stock which could be distributed. Then it was that Associates issued its stock to the Rosenthal Co., which proceeded to perform its obligation to distribute the stock

of Associates to its stockholders. All of these things took place in 1934. It seems to us a strained construction indeed that would hold that this distribution took place in 1933. We think as the Supreme Court stated in Mason v. Routzahn, 275 U.S. 175, 178, 48 S.Ct. 50, 72 L.Ed. 223, "* * * the date of payment, not the date of declaration of the dividend, is the date of distribution * * *."

Since the evidence is undisputed that no attempt at distribution of the stock was made until 1934, it is of no consequence that the authority therefor dated back to 1933.

We hold that there was no distribution of the stock in 1933, and therefore the respondent does not come within the terms of Sec. 112(g), which would have exempted from taxation the stock in question.

The judgment of the Tax Court is reversed.

---

be made pro-rata to the stockholders of record on this day, August 15, 1933, in accordance with a plan of reorganization to separate the investment function of the

Company so that it may confine its activities to merchandising, trading, and functions attending thereto."