JOHN E. BYRNE AND NELLIE A. BYRNE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6247–66.   Filed August 24, 1970.

*Elmer B. Hodges*, for the petitioners.
*Edward G. Lavery*, for the respondent.

1634

OPINION

Section 451(a)[1] of the Code recites, in pertinent part, that "The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer." The question presented is whether within the contemplation of section 451(a) certain shares of marketable securities, distributed as part of a corporate liquidation, were "received" by petitioner in 1963—the year in which they were delivered to a broker with instructions that they be reissued to petitioner, or 1964—the year in which the new certificates were placed in his possession. Since petitioner was a cash basis taxpayer, this question must turn on whether petitioner should be regarded as having constructively received the contested securities during the year 1963.

The facts of this case are similar to those which we had before us in *J. T. Hatfield*, 32 B.T.A. 1 (1935), one of the cases cited by petitioner. In that case the Board had to decide whether the stockholders of a liquidating corporation realized income on December 31, 1930—the date on which shares of stock in 11 corporations, held in the name of the liquidating corporation, were delivered to an attorney acting for the corporation with directions that he arrange to have the shares reissued to the individual stockholders; or, in 1931 when the attorney delivered the reissued shares to the liquidating corporation's stockholders. In holding that recognition of income was properly deferred until 1931, the Board employed the following language:

the mere turning over of assets to liquidating trustees does not constitute receipt of the property by the stockholders for tax purposes. * * *

The petitioner did not actualy receive the stock in 1930 and the delivery of the securities to McLean [the attorney acting for the corporation] did not amount to constructive receipt. * * * [32 B.T.A. at 3]

However, in reaching its result, the Court also looked to other factors which are not present in the case at bar. Among the other factors considered was the question of whether the liquidating corporation intended that delivery to McLean would constitute delivery to the

---

[1] All statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended.

Pertinent regulations under sec. 451 are as follows:

Sec. 1.451-2. Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

corporation's stockholders. Addressing itself to this question, the Board arrived at the following conclusion:

The officers of the corporation were charged by statute with the liquidation of the corporation's affairs as promptly as possible. As a means to that end, they designated McLean to receive the property and distribute it in proper proportions to those entitled thereto. * * * That the corporation did not intend delivery of the stock to McLean *or the broker* as conveyance of title or delivery, actual or constructive, to the stockholders, is shown by the corporate letters of December 29, 1930, and January 12, 1931. The whole record shows an intention to withhold delivery of the assets until the stocks had been reissued to the stockholders in the proper proportions. [Emphasis supplied.]

Because the directors of the lumber company in the case at bar intended that delivery to the broker would constitute delivery to petitioner, we believe it is necessary to extend our investigation beyond the *Hatfield* case in disposing of the question before us.

The problem of what constitutes receipt under section 451(a), as it pertains to cash basis taxpayers, has been raised in a variety of contexts. One of the most frequently cited cases in this area, and one on which petitioner places great reliance, is that of *Avery* v. *Commissioner*, 292 U.S. 210 (1934). In *Avery*, the Supreme Court had to decide whether Sewell Lee Avery, the then president of the United States Gypsum Co., realized income on December 31 of each of the 2 years in question—the date on which dividend checks were mailed to Avery, or on January 2 of each of the succeeding years—the date on which these checks were received. In holding that the "ordinary meaning" of the words contained in the Revenue Act of 1924 analog to section 451(a) could not be read to require recognition of income in the 2 earlier years, the Court also predicated its conclusion on the fact that the dividends could not be considered as having been "unqualifiedly [made] subject to the petitioner's demand" on December 31 since "[I]t was the practice of the Company to pay all dividends by checks not intended to reach stockholders until the first business day of January." The Court went on to say that:

there is nothing to show that petitioner could have obtained payment on December 31st, he did not expect this and the practice shows the company had no intention to make actual payment on that day. Nothing indicates that it recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt. The mere promise or obligation of the corporation to pay on a given date was not enough to subject to petitioner's unqualified demand "cash or other property"; and none of the parties understood that it was.

For a similar result under analogous circumstances, see *Hyland* v. *Commissioner*, 175 F. 2d 422 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court; *Edward S. Harkness*, 31 B.T.A. 1100, 1104

(1935); and *Alvin Hill*, T.C. Memo. 1962–239, cited by petitioner. See also secs. 1.301–1(b) and 1.451–2(b), Income Tax Regs.

In the light of the excerpt from *Avery* v. *Commissioner*, cited above, we are not persuaded that the logic of the *Avery* case may be extended to the case at bar. In the first place, in the case before us the intent of the corporation was not to defer the receipt of the shares of stock by its stockholders, but rather to vest in its stockholders the ownership interest in such shares prior to the calendar year 1964 so as to avoid personal holding company status for that year. In this regard, albeit new certificates were not issued until 1964, the lumber company's directors did all that was required to divest the corporation of its ownership interest in the shares prior to the close of 1963. Under analogous circumstances, such conduct by a corporation has been enough to preclude the *Avery* rationale and to cause recognition in the earlier of 2 possible years. Hence, in *Commissioner* v. *Scatena*, 85 F. 2d 729 (C.A. 9, 1936), affirming 32 B.T.A. 675 (1935), a case submitted under an agreed statement of facts, the Court of Appeals, faced with the question of "whether the stock dividend (there in issue) became unqualifiedly subject to the demand of the taxpayer" in the earlier of 2 possible years, held that such dividends were constructively received at the latest when the corporation "no longer had possession of the certificates of stock representing the dividend," i.e., on the day the certificates were delivered to the transfer agent. In arriving at its result the court distinguished *Avery* as follows:

Thus by November 1, 1928, the stock was out of the hands of the corporations declaring the dividend, and they no longer had possession of the certificates of stock representing the dividend. How soon the stockholders entitled to the dividend would receive the certificates depended upon the speed with which the transfer agent worked.

\*       \*       \*       \*       \*       \*       \*

Whether the taxpayer received her certificates or whether they would have been delivered to her on demand, in the calendar year 1928, is, of course, purely speculative, but it is not vital to our discussion. The declaring corporations had done all that it was possible for them to do to transfer title to the shares to the stockholders.

\*       \*       \*       \*       \*       \*       \*

The intention of the declaring corporations was that title to the dividends passed at the time of declaration or, at the latest, at the time of delivery of the certificates to the transfer agent. Hoffman v. Commissioner, 71 F. (2d) 929, 930 (C.C.A. 2). This disposes of Avery v. Commissioner, 292 U.S. 210, 54 S. Ct. 674, 677, 78 L.Ed. 1216, cited by the Commissioner, where the intention and practice of the declaring corporation was that no stockholder should receive his dividend check before the first day of the month following the month in which the dividend was made payable. There the dividends were "not 'unqualifiedly made subject to the demand of the stockholder,'" until the first day of the month following the month in which they were payable. \* \* \*

Similarly in *Minal E. Young, Executor, et al.*, 6 B.T.A. 472 (1927), a pre-*Avery* case, the Board, in holding that the shareholders of a corporation had experienced a taxable event in 1918—the year in which their corporation had adopted a resolution providing for the distribution to its shareholders of stock held in another corporation (as opposed to the later year of receipt), predicated its conclusion on what it thought to be the beneficial rights which had been vested in the shareholders as a result of the action taken by the corporation. The following language from that case (cited by us in *Scatena*) summarizes the reasoning employed by the Board in arriving at its result:

While it may be true that a division or distribution by a corporation is not taxable to a stockholder who is on the cash receipts and disbursements basis until the amount of the distribution is made available to him, this does not mean that, when stock of one corporation is distributed by another, the certificate itself must actually be received before there can be taxable gain. Since a person may be a stockholder in a corporation without ever having received a stock certificate, the time of the actual receipt of the stock certificate is immaterial. The question is, When did the taxpayers become the beneficial owners of the stock of the Salt Creek Producers Association, Inc.? We think they became the owners thereof in 1918 by virtue of the resolution distributing the stock.[2]

Additionally, we find difficulty in extending the *Avery* rationale to the case at bar because of the nature of the assets which we have before us. In contrast to the dividend checks which were mailed in *Avery*, the assets delivered in this case were certificates of stock which, though

---

[2] A similar result was reached in the case *Edmund I. Kaufmann*, 46 B.T.A. 924 (1942), affd. 136 F. 2d 356 (C.A. 4, 1943) revd. 136 F. 2d 366 (C.A. 7, 1943), 137 F. 2d 524 (C.A. 3, 1943), where the Board, in holding that shares of stock were to be regarded as having been received in the earlier of 2 possible years, employed the following rationale:

"The uncontradicted evidence here is to the effect that the Rosenthal Co. not only decided and intended in 1933 to distribute to its stockholders all of the stock of Associates, but also that it voted at the meeting of August 10, 1933, to make such distribution on August 15, 1933. The Rosenthal Co. thus became obligated to pay the dividend on August 15, 1933, and the subject matter of the dividend, i.e., the 1,500 shares of Associates stock, was earmarked and segregated from other corporate assets by specific description thereof in the resolution by which the dividend was voted. The stock was thereafter held by the Rosenthal Co. as trustee for its stockholders and it was powerless to rescind its action as to such distribution. *Commissioner* v. *Scatena*, 85 Fed. (2d) 729. It follows, therefore, that the petitioners, on August 15, 1933, had an absolute and fixed right to receive the stock of Associates. *Estate of Henry W. Putnam, supra; Falmouth Co., supra.*

"Shares of stock are the interest or right which the owner thereof has in the management, profits, and assets of the corporation, while stock certificates are mere symbols or paper evidences of the ownership of the shares and are not the stock itself. One may be a shareholder in a corporation without ever receiving a certificate of stock therein; and a shareholder may sell his interest in and pass title to the stock prior to delivery of certificates thereof if such was the intention of the parties. * * * [Citations omitted.]"
Compare *Louis F. Timmerman*, 42 B.T.A. 188 (1940), where certificates of stock received in a corporate liquidation were valued on the date of actual delivery, as opposed to the earlier date of distribution, on the ground that whatever beneficial ownership rights might otherwise have attached to the liquidating corporation's shareholders prior to the receipt of the distributed shares and subsequent to their actual distribution were, on the facts, without economic value since the distribution resolution of the liquidating corporation provided that distribution would not take place until the occurrence of a specified event, the date of which was unknown to its shareholders.

prima facie evidence of an ownership interest in a corporation, need not be issued to constitute one a stockholder of that corporation. *Richardson* v. *Shaw*, 209 U.S. 365, 378 (1908); *Wesley H. Morgan*, 46 T.C. 878 (1966). The Court of Appeals in *Snyder* v. *Commissioner*, 73 F. 2d 5 (C.A. 3, 1934), affd. 295 U.S. 134 (1935), has aptly described the nature of stock certificates vis-a-vis shares of the stock (which may be represented by such certificates) as follows:

Shares of stock and certificates for shares of stock are different legal entities. Shares of stock "are intangible and rest in abstract legal contemplation." They are the interest or right which the owner has in the management, profits and assets of a corporation. 14 C.J. §§ 506, 509. Though incorporeal, they nevertheless are property and are the subject of conversion. 14 C.J. § 509; 7 R.C.L. § 166; Skinner v. Eaton, Collector (C.C.A.) 45 F. (2d) 568. A certificate of stock, on the other hand, is the symbol or paper evidence of the ownership of shares; it is not the stock itself. It is merely written evidence, and then only prima facie evidence, of the ownership thereof by the person designated therein and of the rights and liabilities resulting from such ownership. 14 C.J. § 698, 701, 702, 707, 709, 710, 1043. Howbert v. Penrose (C.C.A.) 38 F. (2d) 577, 579, 68 A.L.R. 820. A stockholder may prove his ownership of shares by evidence other than that of the certificate, 14 C.J. § 1272; and he may dispose of his shares and surrender his title therein by sale accompanied with delivery of a certificate in his name which he has endorsed with a blank assignment and power of attorney authorizing the transfer. 14 C.J. §§ 1033, 1050; 7 R.C.L. §§ 239, 243. As between seller and buyer the shares pass by mere delivery of the certificate, so endorsed, * * *

From the above it follows that an economic interest in a corporation may arise through a certificate of stock evidencing such interest has not yet been issued in the name of the owner. Such has been the case where, although certificates originally issued were rendered void as a result of undercapitalization, the court, in the absence of new certificates, looked to other factors to establish the continued proprietary interest of the shareholders during the year in question (*Bonsall* v. *Commissioner*, 317 F. 2d 61 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court); where a preferred shareholder of one company, having failed to convert his shares into certificates of the surviving company, was nevertheless held to have constructively received dividends on the surviving company's stock (*Brundage* v. *United States*, 275 F. 2d 424 (C.A. 7, 1960)); and where subscribed shares were treated as having been issued for purposes of section 1239 even though the certificates evidencing same were not to be issued until the purchase price was tendered (*United States* v. *Parker*, 376 F. 2d 402, 409 (C.A. 5, 1967)). See also *Federal Employees' Distributing Co.* v. *United States*, 206 F. Supp. 330, 334 (S.D. Cal. 1962).

Moreover, where certificates of stock have been issued and are outstanding, conveyance of the shareholder interest represented by such certificates may be accomplished by means other than actual manual tradition of the certificates to the intended transferee. *Grissom* v.

*Sternberger*, 10 F. 2d 764 (C.A. 4, 1926), affirming a District Court case; *Hogle* v. *Commissioner*, 132 F. 2d 66 (C.A. 10, 1942), reversing 46 B.T.A. 122 (1942) ; and *Webb* v. *Commissioner*, 67 F. 2d 859 (C.A. 2, 1933), affirming a Memorandum Opinion of the Board. Accordingly, in the case of *John W. Sherwood*, 8 B.T.A. 103 (1927), the Board, employing a rationale similar to that later adopted by the Court of Appeals in *Scatena*, held that delivery to a buyer of stock was accomplished when the seller endorsed the certificates and placed them in the custody of his attorney to hold in escrow. In reaching the conclusions stated, the Board employed the following language:

As to * * * [the seller's] stock, while it was not delivered to * * * [the buyer] until 1920, the evidence shows that * * * [the seller] considered that after he had endorsed it and turned it over to his attorney * * * [in the earlier year] he had nothing further to do with it and that he had surrendered it.

In accord with this view is *Hoffman* v. *Commissioner*, 71 F. 2d 929 (C.A. 2, 1934), reversing and affirming 28 B.T.A. 1264 (1933).

Given the foregoing, the central question in this case is whether, within the intendment of section 451 and the regulations promulgated thereunder, the delivery of the endorsed certificates (accompanied by the irrevocable power of attorney) to B. C. Christopher & Co. was sufficient to vest in petitioner a beneficial interest equivalent to dominion and control.

We start with the proposition that it is "customary for brokerage houses to carry the legal title to stocks in the names of designated nominees and to transfer beneficial ownership by entries on the books of the nominee or of the brokerage house." *Hogle* v. *Commissioner, supra.* As such the broker acts in a fiduciary capacity. The nature of this fiduciary duty, in a case such as the one now under consideration, where the broker has received for transfer shares of stock which have been endorsed by the party tendering the certificates in favor of another, is, in our estimation, determined by the intent of the tendering party.[3] Accordingly, where, as here, a transferor of fully endorsed stock certificates delivers such certificates to a broker with the intent that such securities are to become the property of the transferee, we believe that such act is sufficient to divest the transferor of all dominion and control over the certificates and to vest in the transferee a beneficial interest in the certificates coextensive with that formerly held by the transferor. Under such circumstances it is our conclusion that, once delivery has been accomplished, the broker must be regarded

[3] Compare *Webb* v. *Commissioner*, 67 F. 2d 859 (C.A. 2, 1933) where the petitioner was deemed to have received stocks held in a brokerage account gratuitously established in her favor by another, even though the account was terminable by and subject to the supervision of the other party.

as holding the certificates of stock as trustee for the transferee, as opposed to agent for the transferor.

We believe the result we have reached is not only consonant with the realities of the case at bar, but is also strongly indicated by an analogous line of tax cases where delivery of a gift of endorsed certificates of stock to a third party with the intent that such act would vest in the intended donee all beneficial rights attached to the stock, has been deemed sufficient to divest the donor of all dominion and control, and to constitute the third party a trustee on behalf of the donee. *Smith* v. *Commissioner*, 59 F. 2d 533 (C.A. 7, 1932), affirming in part 23 B.T.A. 278 (1931) (delivery of shares of stock to one of donor's sons sufficient to consummate intended prorata gift to all of his children: "[D]elivery to actual donee is not necessary; it may be made to a third person for the benefit of [the] donee, and in such event the third person becomes a trustee for the donee"); *Grissom* v. *Sternberger*, *supra* ("It is not necessary to complete a gift that delivery be made directly to the donee; the delivery may be to a third person for the benefit of the donee. And where the property is delivered to such third person for the benefit of the donee, with intention that present title and ownership shall pass, * * * the gift is executed and the third person is constituted a trustee of the donee"); *Owen* v. *Commissioner*, 53 F. 2d 329 (C.A. 9, 1931), reversing 18 B.T.A. 539 (1929) (delivery of unendorsed certificates of stock to bank to be held for benefit of donor's wife sufficient to consummate present gift of stock though actual delivery of certificates to wife deferred for a year pursuant to terms of accompanying agreement. *Grissom* v. *Sternberger* followed.). For a similar result in a nontax vein, see also *Young* v. *Cockman*, 182 Md. 246, 34 A. 2d 428 (1943); *Home for Destitute Crippled Children* v. *Boomer*, 308 Ill. App. 170, 31 N.E. 2d 812 (Dist. Ct. App. 1941); and *Strout* v. *Burgess*, 144 Me. 263, 68 A. 2d 241 (1949).

In the instant case we think it is clear from the testimony of Genevieve and her brother Richard—the two active directors of the corporation—that Genevieve, acting on behalf of the corporation, intended to vest in petitioner a full present interest in his prorata share of the endorsed certificates, to be effective the moment they were placed in the custody of the broker. Accordingly, in conformity with the cases cited above, we believe petitioners received a present beneficial interest in such shares in the year 1963.

To reflect the agreement reached by the parties,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

TANNENWALD, J., concurs in the result.