T.C. Memo. 2004-197

UNITED STATES TAX COURT

LINDA OLSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8437-03.                    Filed August 31, 2004.

<u>Barry K. Rothman</u>, for petitioner.

<u>Laura Beth Salant</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court to redetermine

respondent's determination of a $182,636 deficiency in her 2000

Federal income tax and a $36,459 accuracy-related penalty under

section 6662(a) of the Internal Revenue Code as applicable to

2000.  Following petitioner's concessions, we are left to decide

whether petitioner during 2000 received a $461,709 distribution from an individual retirement account (IRA).  We hold she did.

FINDINGS OF FACT

Some facts were stipulated and are so found.  The stipulations of fact and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in Beverly Hills, California, when her petition to this Court was filed.  She filed a 2000 Federal income tax return that did not report any distribution received from an IRA.  Prudential Securities Inc. (Prudential) reported on a 2000 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that petitioner had during 2000 received a taxable distribution of $461,709.19 from an IRA.  Respondent in the notice of deficiency determined the same (rounding the $461,709.19 to $461,709).

Petitioner's brother, Peter D. Olson (Olson), died on November 14, 1998.  When he died, he owned an IRA held in Prudential account number 004-R68371-N3 (Olson's account).  The assets in the IRA at the time of his death included 115,917 shares of the stock of Klever Marketing Inc. (Klever).  Olson, a founder and director of Klever, received those shares on or before March 4, 1998.  The Klever stock certificate (certificate) underlying those shares, number 6278, stated:

> The shares represented by this certificate have not
> been registered under the Securities Act of 1933.  The

shares have been acquired for investment and may not be offered, sold or otherwise transferred in the absence of an effective Registration Statement for the shares under the Securities Act of 1933 or a prior opinion of counsel satisfactory to the issuer that registration is not required under that Act.

Petitioner was the sole beneficiary of Olson's account. Her account at Prudential was numbered JQS-027297-N3 (petitioner's account). On February 21, 2000, petitioner signed a 2-page Prudential form (form) entitled "Distribution Request". Prudential gave this form to its account holders who wanted to request a distribution from a retirement account. The form signed by petitioner states on page one that (1) she is the beneficiary of Olson's account, (2) Olson died, (3) she, on account of Olson's death, is requesting a distribution of all amounts in Olson's account in closure thereof, (4) these amounts consist of cash and securities, (5) these amounts should be distributed to petitioner's account by way of a journal entry, and (6) Prudential should not withhold any Federal or State taxes from this distribution. Page 2 of the form bears petitioner's signature and handwritten date of February 21, 2000, immediately below the following statement:

> By signing here, I certify that the information provided on this form regarding my status with respect to the IRA, SEP-IRA, SARSEP-IRA, SIMPLE IRA, ROTH IRA or EDUCATION IRA involved and in all other aspects is correct. I also certify that the action directed on this form fully complies with the terms of the applicable Individual Retirement Agreement. I acknowledge that the custodian is not responsible for ascertaining the appropriateness of the distribution.

Also, my Federal and State Income Tax withholding election is applicable to any subsequent distribution until it is revoked by me under the procedure established by the custodian. I acknowledge some states require withholding if Federal withholding is elected. I also acknowledge that certain fees may be charged to the account depending on the type of distribution I have requested. I also acknowledge that funds must be available for the requested gross distribution to occur. If you have any questions, please call your Financial Advisor * * * for details.

Prudential made the requested journal entry as of March 3, 2000, and on March 3, 2000, transferred 155,917 Klever shares from Olson's account to petitioner's account. Prudential valued these shares at $456,481.14 for purposes of the transfer. Prudential also in March 2000 transferred $5,228.04 in cash from Olson's account to petitioner's account.[1] From March 3 to December 31, 2000, Prudential included the subject shares and their value in petitioner's account and issued to petitioner statements for that account showing the same with an unexplained notation "legal documents pending". The statement for December 2000 lists the total value of the subject shares at $43,468.88 as of December 31, 2000, and notes that petitioner had a $413,012.26 unrealized loss on those shares as of that date.

A transfer agent acts on behalf of an issuer of securities to record the owners of those securities. The transfer agent for Klever stock was Atlas Stock Transfer (Atlas). On October 30,

---

[1] The amount of this cash and the value of the subject shares total $461,709.19.

2001, Klever notified Atlas that petitioner had recently asked it to lift the restrictive legend as to the shares underlying certificate number 6278 and to transfer those shares into the street name of Prudential. On November 28, 2001, in response to this notification, Atlas cancelled certificate number 6278 and issued in the street name of Prudential certificate number 6980 with no restrictive legend. Street name securities are held by a company such as Prudential for the benefit of its clients. Securities held in street name may be placed into an individual's account and beneficially owned by the individual although the owner listed in the transfer agent's records is a street name. A transfer agent usually does not know the identity of the owner of securities which are recorded in its records in street name.

## OPINION

Respondent determined that petitioner received a $461,709 distribution during 2000. Respondent in support of that determination focuses on the fact that petitioner, during 2000, both authorized the distribution and received it in her account. Petitioner argues that she received no distribution during 2000. Petitioner focuses on the fact that certificate number 6278 was not changed during 2000 to reflect any change in the name of the underlying shares' owner and that this certificate contained a legend that prohibited any transfer of the underlying shares

unless registered or opined by counsel to be excepted from registration.

We agree with respondent that petitioner received the subject distribution during 2000.[2]  Contrary to petitioner's assertion, the transfer of the subject shares from Olson's account to petitioner's account, to be effective, did not require that a new certificate be issued to reflect a change of name from that of the owner shown on certificate number 6278.  As the Court noted in Meyer v. Commissioner, 46 T.C. 65, 106 (1966), revd. on other grounds 383 F.2d 883 (8th Cir. 1967), the act of a transfer agent in recording an ownership change in stock is a "ministerial, bookkeeping act", and a change in stock ownership may occur without any action by a transfer agent and without regard to whether new certificates are issued to reflect the transfer.  See also Corliss v. Bowers, 281 U.S. 376, 378 (1930) ("taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed"); Byrne v. Commissioner, 54 T.C. 1632, 1639 (1970) ("an economic interest in a corporation may arise although a certificate of stock evidencing such interest has not yet been issued in the name of the owner"), affd. 449 F.2d 759 (8th Cir. 1971).  Accord

---

[2] We decide this issue without regard to which party bears the burden of proof.  We note, however, that taxpayers generally bear the burden of proof in this Court and that petitioner has not asserted in her brief that respondent bears the burden of proof in this case.

Helvering v. Rankin, 295 U.S. 123, 127 (1935), where the Supreme
Court described stock transfers of the taxpayer, Turner, stating:

> In none of these transactions did the broker
> deliver to Turner, or Turner to the broker, any stock
> certificate.  No specific certificate of stock was ever
> bought or sold by the broker for Turner; and none was
> earmarked or allocated for him in any manner.  The
> purchases and sales affecting his account were made
> through the medium of street certificates handled by
> the broker; and the transactions were evidenced solely
> by debits and credits in his account on the broker's
> books * * *

Petitioner's assertion that she acquired the subject shares
only upon Atlas's issuance of a new certificate is further eroded
by our finding that she was the one who in fact caused Atlas to
issue a new certificate.  Petitioner's ability to cause the
cancellation of certificate number 6278 and the issuance of
certificate number 6980 is indicative of her ownership of the
subject shares before November 28, 2001, the date on which that
new certificate was issued.  While petitioner points the Court to
Rev. Rul. 81-158, 1981-1 C.B. 205, in search of a contrary
holding, she construes that ruling too narrowly.  Although both
situations in the ruling do conclude that the transfer of stock
occurs when the transfer agent is directed to reissue shares in
the name of the new owner, the ruling does not conclude, as
petitioner would have it be, that a transfer of stock may only
occur when a transfer agent receives such a direction.

Nor is it dispositive to our decision that certificate
number 6278 contained the referenced restrictive legend.  Given

the record before us, the dispositive facts of this case, as we see it, are fourfold. First, petitioner intended to effect a distribution of the subject shares into petitioner's account during 2000. Second, she relayed that intent to Prudential during 2000. Third, Prudential carried out that intent during 2000 by transferring the subject shares into petitioner's account. Fourth, petitioner during the last 10 months of 2000 knowingly enjoyed the benefit of the added value of those shares.

We hold for respondent.[3] All arguments in this case have been considered, and those arguments not discussed herein are without merit or inapplicable to our decision.[4]

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[3] Petitioner's request for a contrary holding is most likely driven by the fact that our holding means that she is liable for 2000 Federal income tax on the value of the subject shares at the time of distribution, yet her recognition of any loss realized as to those shares is generally limited to $3,000 per year.

[4] Petitioner asserts that the value of the subject shares must be discounted because they were restricted shares which could not be transferred publicly. Even if we were to assume that petitioner is correct in her assertion that the subject shares could not be transferred publicly, an assertion which may actually be incorrect given the many exceptions set forth in rule 144 of the Securities Act of 1933, 17 C.F.R. sec. 230.144 (2004), for public transfers, we do not find (nor has petitioner pointed us to) any evidence in the record upon which to determine such a discount.